**Mark GERDES, Appellant,**

v.

**STATE of Minnesota, Respondent.**

No. 81–315.

Supreme Court of Minnesota.

May 28, 1982.

C. Paul Jones, Public Defender, and Mary E. Steenson, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Gary Hansen and Kenneth Saffold, Sp. Asst. Attys. Gen., St. Paul, James E. O'Neill, County Atty., Pipestone, for respondent.

SCOTT, Justice.

The appellant, Mark Gerdes, was found guilty by a jury of possession of a short-barreled shotgun, in violation of Minn.Stat. § 609.67, subd. 2 (1980).[1] For this conviction the trial judge sentenced appellant to a 5-year prison term, with execution of sentence stayed provided that he serve 60 days in the county jail.

On this appeal from judgment of conviction and from an order of the district court denying post-conviction relief, appellant contends:

(1) that the conviction was based on insufficient evidence because the gun in question was inoperable and possession of an inoperable short-barreled shotgun is not illegal;

(2) that his rights were prejudiced by the amendment of the complaint, after he testified, to change the date of the alleged illegal possession of the gun from "on or about the 25th day of August, 1978" to read "on or about the 15th day of July, 1978"; and

(3) that the gun should have been suppressed as the fruit of a Fourth Amendment violation; namely, a warranted search based on stale probable cause.

The charges filed against appellant were the result of investigations conducted by the Pipestone County police and statements made by informants. At all relevant times appellant's residence, owned by an absentee landlord, was rented as a rooming house to male students at the local vocational school. Steven Perkins and Lon Saulsbury were on appellant's premises in late July, 1978, at the request of the owner, to conduct a real estate appraisal of the premises. During the visit, Perkins observed what he believed to be stolen traffic control devices. He described these items to the chief of police in late August, 1978. Law enforcement officials had independently been conducting a surveillance of appellant's rooming house which began in late July, 1978. On August 25, 1978, after obtaining a search warrant based on Perkins' statements and the information obtained during their own surveillance, police officers went to the residence and executed the warrant. In various rooms of the house, including the room which appellant had rented, they found numerous street signs and similar items which had been stolen in recent months. In appellant's room they also found several guns, including the short-barreled shotgun appel-

---

1. Minn.Stat. § 609.67 reads in part as follows:

Subdivision 1. Definition. (a) "Machine gun" means any firearm designed to discharge, or capable of discharging automatically more than once by a single function of the trigger.

(b) "Shotgun" means a weapon designed, redesigned, made or remade which is intended to be fired from the shoulder and uses the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of ball shot or a single projectile for each single pull of the trigger.

(c) "Short-barreled shotgun" means a shotgun having one or more barrels less than 18 inches in length and any weapon made from a shotgun if such weapon as modified has an overall length less than 26 inches.

Subd. 2. Acts prohibited. Except as otherwise provided herein, whoever owns, possesses, or operates a machine gun or a short-barreled shotgun may be sentenced to imprisonment for not more than five years or to payment of a fine of not more than $5,000, or both.

lant was later convicted of possessing. They also found identification papers connecting appellant with that room. Testifying in his own behalf at trial, appellant admitted possessing the illegal weapon in July 1978. He further admitted purchasing the weapon, but claimed he had given the gun to his roommate, Jim Holinka, since deceased, before August 25, 1978. In response to the testimony, the state moved to amend the complaint to read that appellant possessed the shotgun on July 15, 1978, as indicated above. The court granted the state's motion.

■ 1. The appellant concedes that the possession of an "operable" short-barreled shotgun would sustain his conviction and that "the legislative policy behind the prohibition of the possession of an operable short-barreled shotgun is valid." The appellant contends, though, that the statute only applies to operable short-barreled shotguns. Upon examination of section 609.67 we do not find the word "operable," nor any indication that such a word should be read into the statute. The statute only addresses the original design of the weapon and reflects a strong public policy to dissuade persons from possessing a certain class of dangerous weapons. Under the statute, it appears to be sufficient to show only that the gun was possessed by the defendant. The state argues that the intent of the legislature is demonstrated by the fact that one can be convicted of a violation for the mere possession, even if there is no intent to employ such weapon criminally. The statute seems to indicate that a short-barreled shotgun is a dangerous weapon because a person merely displaying such a weapon during a crime would meet with very little resistance.

Although no Minnesota case has directly addressed this issue, *LaMere v. State*, 278 N.W.2d 552 (Minn.1979), is instructive. In *LaMere*, this court dealt with whether an inoperable firearm is a dangerous weapon. In affirmatively answering that question, we observed: "An unloaded firearm has the same capacity to create fear and/or to cause people to comply with criminal demands as a loaded one." *Id.* at 556. In *Commonwealth v. Ponds*, 236 Pa.Super. 107, 113, 345 A.2d 253, 256 (1975), the Pennsylvania court stated:

> The fact that a sawed-off shotgun is at a given time inoperable does not discount the danger which the legislature intended to prevent. The mere possession of an item identifiable as a sawed-off shotgun, even though inoperable is still an ominous presence, and has no place nor possible use in the community and should be prohibited.

We therefore hold that the operability of the weapon was immaterial.

■ 2. The second contention of the appellant is that his substantial rights were prejudiced by the trial court's allowance of the amendment of the complaint, as stated above. Minn.R.Crim.P. 17.05 provides: "The court may permit an indictment or complaint to be amended at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." Upon careful review of Rule 17.05, we find that in order to prejudice the substantial rights of the defendant, it must be shown that the amendment either added or charged a different offense. Here, the amendment only changed the date of the possession of the short-barreled shotgun from "on or about August 25" to "on or about July 15." This did not change a single element of the crime to be proven, other than the date of possession. In *State v. McGunn*, 208 Minn. 349, 294 N.W. 208 (1940), we held that where the date is not the essential element of the crime the trial court may properly allow an amendment of the complaint so that it comports with the evidence presented at trial. Therefore, the matter of allowing amendments to complaints under Minn.R.Crim.P. 17.05 is in the sound discretion of the trial judge. Here the judge did not abuse his discretion.

■ 3. The third contention of the appellant is that the affidavit supporting the search warrant failed to contain sufficient information from which the magistrate could have concluded that the stolen property would be found on the premises on August 25. For several reasons, the traffic

control devices that were the subject of this search would fall into the category of items that are unlikely to be disposed of quickly. First, it is generally known that traffic control devices are appropriated by individuals for their personal use. The items are often made a part of the home decor. Probable cause has been held not stale even after the passage of several months where the items sought are of "enduring utility to their taker." *State v. Flom*, 285 N.W.2d 476, 477 (Minn.1979). It need not be necessary for the affidavit to specifically describe the decor of the room where traffic control devices were seen to enable a magistrate to conclude that such items are likely to continue to be retained for personal use.

A second reason for concluding that the items in question remained where they had been seen is the lack of ready market for such items. In *United States v. Dauphinee*, 538 F.2d 1, 5 (1st Cir. 1976), the Court of Appeals held that a 30-day time lapse was not too long where the contraband (hand grenades) did not lend itself to rapid disposition even in the criminal marketplace. Traffic control devices are certainly not the kind of item accepted by pawn shops or other potential repositories of stolen goods.

Finally, as the trial judge noted in his memorandum, the appellant would have incurred special risks in attempting to dispose of the property. Traffic control devices are designed to be visible and conspicuous, and the attempt to remove them in a small town like Pipestone would likely have led to detection. *See United States v. Rahn*, 511 F.2d 290, 293 (10th Cir.), *cert. denied*, 423 U.S. 825, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975).

For these reasons, we hold that the court was presented with sufficient information from which to conclude that there was probable cause to believe that the items described in the search warrant would be found on the premises 30 days after they were initially observed there.

Affirmed.