**STATE of Minnesota, Respondent,**

v.

**Robert Alan LEHIKOINEN, Appellant.**

No. C6–90–1252.

Court of Appeals of Minnesota.

Dec. 4, 1990.

Fred T. Friedman, Duluth, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Marvin Ketola, Carlton County Atty., Robert Macaulay, Asst. County Atty., Carlton, for respondent.

\* Wm. J. Nierengarten, acting as judge of the Court of Appeals by appointment pursuant to

Considered and decided by FORSBERG, P.J., and RANDALL and NIERENGARTEN\*, JJ.

OPINION

RANDALL, Judge.

Appellant Robert Alan Lehikoinen was charged by complaint in Carlton County with fifth degree assault in violation of Minn.Stat. § 609.224, subd. 1(2) (1988) (intentional infliction of bodily harm). After a trial to the court sitting without a jury, appellant, representing himself (pro se), was found guilty as charged. Appellant was sentenced to sixty days in jail, stayed for one year probation with conditions that he either pay a fine of $500 or perform 100 hours of community service and complete a domestic abuse program. Lehikoinen appeals, challenging the sufficiency of the evidence to sustain his conviction. We reverse.

FACTS

Appellant's conviction arose out of an alleged incident of domestic violence. At the time of the incident, appellant was living with Mary Sue Whitebird, the victim. Whitebird was the only witness to testify at trial. Whitebird's sworn testimony varied greatly from the written reports of the two investigating deputies from the Carlton County sheriff's department. Their reports were not introduced as evidence but did form the basis for the initial arrest.

According to the reports of Officers E. Clemons and E. Jensen, on October 21, 1989, at approximately 4:20 a.m., the Carlton County sheriff's department received a call from the Cloquet Memorial Hospital regarding a possible incident of domestic abuse. At the hospital, Whitebird told the officers that she and appellant had gone out for the evening. Upon arriving home later that evening, appellant went to bed. A short time later their four-month old infant started crying. Whitebird laid the

Minn. Const. art. VI, § 2.

infant on the bed and was going to change its diaper when appellant woke up. He was angry and began yelling at Whitebird. Appellant grabbed a glass baby bottle and began hitting Whitebird around the legs and then hit her on the head. Whitebird, while holding the baby, was knocked to the floor. Appellant continued to hit her in the face with the baby bottle.

Whitebird suffered a large bump in the center of her forehead, a cut above her right eye which required seven stitches, and a cut on her nose which required one stitch. Also, her left leg was cut and her right kneecap was bruised. While at the hospital, Whitebird was given a victim's packet and informed that she could file for a protection order on the following Monday.

The most distinctive feature about this record is that neither deputy was called to testify at the trial, investigative reports were neither offered nor stipulated to, and no one from the hospital or any place else was called to shed light on the nature and source of Whitebird's injuries. The only evidence submitted to the trial court was Whitebird's testimony, and she adamantly denied at trial that appellant had assaulted her. Whitebird described the incident as an act of self-defense by appellant.

Whitebird's testimony may be set out as follows. After an evening out, she and appellant arrived at their residence at approximately two o'clock a.m. Because of a discussion they had about the baby, Whitebird was very angry with appellant. While the infant was crying, Whitebird and appellant began quarreling over who was going to feed the baby. Whitebird became angry and gestured as though she were going to hit appellant with the baby bottle. Whitebird raised the bottle and appellant "smacked" her arm to get it out of the way. The bottle broke and that is when Whitebird was injured. Whitebird took the infant and her son and went to her sister's, and her sister gave her a ride to the hospital.

Even after being reminded by the trial court that she was under oath, Whitebird denied appellant struck her with the bottle.

She did admit she had told the officers, that night at the hospital, that appellant hit her with the bottle. However, Whitebird went on to say she "may have said some things that weren't true because [she] was mad."

When questioned by the prosecutor, Whitebird repeatedly denied that appellant hit her with the baby bottle:

Q. Okay, Did—did—as you were getting the baby ready, did [appellant] strike you?

A. No. He did not.

   \*      \*      \*      \*      \*      \*

Q. Did [appellant] strike you at some point?

A. No. Not—not physically.

   \*      \*      \*      \*      \*      \*

Q. Did [appellant] strike you with a bottle?

A. No.

Near the close of testimony, the following exchange took place between the trial court and Whitebird:

Q. Ms. Whitebird, how many times did [appellant] hit you with the bottle?

A. He didn't hit me with the bottle. I know that's the way it looks on the report. It looks like he took the bottle and started beating me up with it, and that— and that's not the way it happened.

Q. My question was—

A. He didn't hit me with the bottle.

Q. At all?

A. No. He didn't have the bottle in his hands. I did.

Q. But you told the deputy he hit you with the bottle.

A. (Indicating.)

Q. Is that yes? Did you?

A. I believe I might have told him that.

When questioned about injury to her leg and knee, Whitebird said the driveway was icy and she fell down many times on the way down the road. Whitebird admitted she took steps to obtain a restraining order but said she was pushed by people in her family to do so because they were upset about her stitches.

On this record, the trial court held the state had met its burden of proof and found appellant guilty of fifth degree assault.

## ISSUE

Does Whitebird's testimony constitute sufficient evidence to sustain appellant's conviction for fifth degree assault in violation of Minn.Stat. § 609.224, subd. 1(2) (intentional infliction of bodily harm)?

## ANALYSIS

When the sufficiency of the evidence is raised on appeal, this court's standard of review is the same for bench trials as it is for jury trials. *State v. Cox*, 278 N.W.2d 62, 65 (Minn.1979). The court's review is "limited to a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the [trier of fact] to reach the verdict which [it] did." *State v. Webb*, 440 N.W.2d 426, 430 (Minn.1989). In making this determination, the reviewing court must "assume the [trier of fact] believed the state's witnesses and disbelieved any contrary evidence." *State v. Bias*, 419 N.W.2d 480, 484 (Minn.1988). A conviction based on circumstantial evidence merits even stricter scrutiny. *Id.* That is,

[t]he evidence is entitled to the same weight as any evidence so long as the circumstances proved are consistent with the hypothesis that the accused is guilty and inconsistent with any rational hypothesis except that of guilt. * * * The conviction may stand only where the circumstances form "a complete chain which, in light of the evidence as a whole, leads so directly to the guilt of the accused as to exclude, beyond a reasonable doubt, any reasonable inference other than that of guilt."

*Our review of the evidence is limited to a review of the testimony of Ms. Whitebird.* No other evidence was submitted to the trial court. The deputies' reports were not used at trial and do not constitute evidence. Neither of the reporting deputies testified nor did anyone from the hospital.

There is no evidence, direct or circumstantial, that supports appellant's conviction. The only evidence before the trial court was the testimony of Whitebird. She denied that appellant struck her with the baby bottle.

Whitebird did admit at trial that on the night of the alleged incident she told the officers appellant had hit her with the baby bottle. However, under oath she impeached the value of this out-of-court statement. Arguably, this might be "some evidence" of guilt. However, it cannot come close to meeting the high standard of proof beyond a reasonable doubt which is needed to sustain a conviction, even when construing the facts and inferences in a light favorable to the verdict. Regardless of what might have happened that night between Whitebird and appellant, this case simply represents a failure of proof.

## DECISION

The evidence is not sufficient, as a matter of law, to sustain appellant's conviction, and appellant's conviction is reversed.

Reversed.

WM. J. NIERENGARTEN, Judge, concurring.

I concur but wish to add the following comments:

The state made the arrest. The state made the charge. The state compelled the trial. Having done so, the state produced nothing in support of its case * except the ambivalent testimony of Whitebird. As a result, we shall never know the actual facts of the case, and the entire proceeding has been a waste of time and effort by all concerned.

---

* Including its failure to even submit a brief in the appeal.