**STATE of Minnesota, Respondent,**

v.

**Ray Howard KNAEBLE, Appellant.**

No. C8–01–1735.

Court of Appeals of Minnesota.

Oct. 29, 2002.

Mike Hatch, Attorney General, Thomas R. Ragatz, Assistant Attorney General, St. Paul, MN; and John J. Muhar, Itasca County Attorney, Grand Rapids, MN, for respondent.

John M. Stuart, State Public Defender, Theodora Gaitas, Assistant Public Defender, Minneapolis, MN, for appellant.

Considered and decided by TOUSSAINT, Chief Judge, WILLIS, Judge, and MINGE, Judge.

## OPINION

WILLIS, Judge.

This appeal is from a conviction of felon in possession of a firearm, in violation of Minn.Stat. § 609.165, subd. 1b(a) (2000), and terroristic threats, in violation of Minn.Stat. § 609.713, subd. 1 (2000). Appellant Ray Knaeble challenges the application of the felon-in-possession statute to his conduct and the sufficiency of the evidence to support the terroristic-threats conviction. Because we conclude that the felon-in-possession statute may properly be applied to possession of an inoperable shotgun and that the evidence is sufficient to prove appellant committed terroristic threats, we affirm.

## FACTS

On April 23, 2001, two Itasca County deputy sheriffs responded to a call reporting a domestic disturbance at the residence of appellant and his brother, Paul. Deputy Ryan Gunderson testified that Paul Knaeble met them in the driveway and told them that appellant was "busting up the house" and had broken windows and a door. The officers asked if there was a gun in the house, and Paul reported that appellant had a shotgun in the house.

Deputy Gunderson testified that Paul also reported that appellant had "threatened him about chopping his head off" and that Paul said he felt threatened. Gunderson testified that after entering the house they saw appellant, who had been in an outbuilding on the property, approach the house. When appellant entered the house, he was upset about a dent in a small gas can, which he blamed on Paul. He threw the gas can at his brother, knocking a baseball cap off Paul's head, and told him not to wear a hat in the house. Gunderson testified that Deputy Johnson then told appellant that he was under arrest. Ap-

pellant, however, picked up an object from the kitchen table and "held it above his head in a threatening-type manner." Deputy Gunderson thought at first that the object was a knife, although at trial he identified a hammer as the object appellant had grabbed. The two officers responded by drawing their weapons and ordering appellant to drop the hammer.

Deputy Gunderson testified that appellant eventually put the hammer down. When he continued to ignore their stated intent to arrest him, however, the officers grabbed appellant and handcuffed him. Appellant told them they had no right to arrest him or to take his gun. Gunderson testified that appellant said that he had received the shotgun as payment from someone who owed him money.

Deputy Robin Johnson testified that when they encountered Paul Knaeble in the driveway, Paul reported that appellant had broken a window on a car, as well as breaking things in the house. Johnson also testified that Paul said appellant had made several oral threats, in particular a threat "to chop his head off." Johnson testified that Paul appeared to be concerned about it, although not terrified.

Deputy Johnson testified that Paul told him that appellant had a pellet gun and a double-barreled shotgun in the house. Johnson testified that he asked Paul to take him inside the house and show him the shotgun. Paul led him to the gun, which was "leaning against a wall in the hallway," in plain view of anyone inside the house. After Johnson did a cursory search of the house, which revealed no other weapons, appellant entered, blaming Paul for the gas-can dent and trying to knock Paul's cap off. At that point, Johnson testified, he told appellant that he was under arrest, and appellant said "something to the effect, like hell I am."

Paul Knaeble testified that he could not remember whether appellant had threatened him. When confronted with his statement to police, however, Paul conceded that he told police that appellant said he "was going to chop my head off or something like that." Paul claimed this was said "a little jokingly" and possibly in reference to a statement made at another time.

Before trial, appellant moved to dismiss the felon-in-possession charge on the ground that the shotgun did not qualify as a "firearm" under the felon-in-possession statute because it was an antique and because it was inoperable. The prosecution presented the testimony of a local sporting-goods merchant, who testified that the shotgun had been manufactured sometime between 1880 and 1920 and was inoperable "in a traditional sense" because the hammer springs were broken or had been removed. He testified, however, that the firing pins on the gun were in place and that the gun could be fired if the hammer were manually struck with sufficient force. The store owner also testified that the gun was not an "antique" under federal regulations, and its sale would be subject to the required paperwork and background check for firearm sales.

The district court denied appellant's motion to dismiss the felon-in-possession charge. The court made detailed factual findings on the age and condition of the shotgun and concluded that a temporarily inoperable gun was a "firearm" for purposes of Minn.Stat. § 609.165, subd. 1b(a).

After the jury found appellant guilty on all three counts (including obstruction of legal process), the court sentenced him to concurrent executed sentences of 21 months for the felon-in-possession offense and 21 months for terroristic threats. This appeal follows.

## ISSUES

1. Was appellant properly convicted under Minn.Stat. § 609.165, subd. 1b(a), based on possession of an inoperable firearm?

2. Does the policy statement in Minn. Stat. § 624.711 preclude conviction for possessing a shotgun?

3. Is the evidence sufficient to support the conviction of terroristic threats?

## ANALYSIS

### I.

■ Appellant argues that because he was charged with constructively possessing the shotgun, and not with using it in the course of an offense, he cannot be convicted for possessing a firearm that was inoperable. Appellant acknowledges supreme court caselaw holding that a "firearm" need not be capable of operation for purposes of criminal liability. But he argues that those holdings should be limited to cases involving actual use of the weapon.

The interpretation of a statute is a question of law subject to de novo review. *State v. Dendy*, 598 N.W.2d 4, 6 (Minn. App.1999), *review denied* (Minn. Sept. 28, 1999).

Appellant was convicted of violating Minn.Stat. § 609.165, subd. 1b(a) (2000), which prohibits the possession of "a firearm" by a person who has been convicted of a crime of violence unless ten years have elapsed since the person's restoration to civil rights. The statute does not define the term "firearm"; neither does the criminal code provide a general definition. But appellant argues that the term does not extend to an inoperable gun.

The supreme court has held, in a challenge to a conviction of aggravated assault, that

a firearm manufactured as such is a "firearm" even if there is some mechanical defect which renders it temporarily inoperable.

*LaMere v. State*, 278 N.W.2d 552, 556 (Minn.1979). The court reasoned by analogy from the case of an unloaded gun, which can elicit the same response from a victim as a loaded gun, and which should be treated alike for purposes of criminal liability, in part because of the difficulty in proving later that the gun was loaded. *Id.* The court concluded that the same considerations "justify treating a firearm as a 'firearm' even if it was temporarily inoperable." *Id.*

Three years after *LaMere*, the supreme court again considered the inoperability of a firearm in the context of a criminal statute, this time in a case in which the defendant was charged with possessing a short-barreled shotgun. *Gerdes v. State*, 319 N.W.2d 710 (Minn.1982). The court again held that the fact that the gun was inoperable was immaterial under the statute. *Id.* at 712. The court noted the state's argument that the statute criminalized mere possession of the weapon, without requiring any intent to use it to commit a criminal offense. *Id.* The court also indicated that possession had been criminalized because of the impact of "merely displaying such a weapon." *Id.* Finally, the court found the *LaMere* holding that an inoperable firearm is a dangerous weapon to be instructive. *Id.*

Appellant argues that *Gerdes* is distinguishable because *any* possession of a short-barreled shotgun is prohibited, whereas in this case appellant's possession of his standard-length shotgun was illegal only because of his status as a convicted felon. He argues that the dangerousness of a short-barreled shotgun warrants criminalizing the possession of even inoperable short-barreled shotguns, whereas the pre-

sumed dangerousness of a convicted felon does not extend to possession of inoperable firearms generally. We disagree.

First, the supreme court had the opportunity to limit the *LaMere* holding regarding inoperable weapons to the *use* of those weapons in *Gerdes*, but it did not do so. *Gerdes* involved possession, but not use, of a firearm, just as does the charge against appellant. *Gerdes*, however, concluded that the potential use by display of an inoperable short-barreled shotgun would be sufficiently convincing to justify making the possession of such a weapon a crime. 319 N.W.2d at 712.

Second, the potential use of a firearm by a convicted felon is presumably the concern that ultimately lies behind the statutory prohibition in Minn.Stat. § 609.165, subd. 1b(a). Even if the actual use of the firearm is not at issue, its potential use by display is sufficient under *Gerdes* to extend the statute's scope to inoperable weapons.

Finally, all statutory prohibitions directed at firearms are presumably based on the dangerousness of those weapons. An inoperable firearm, lacking the same element of danger as an operable weapon, logically could be exempted from all statutory prohibitions. The legislature, however, has not chosen to create such an exemption. This court cannot supply language that the legislature has chosen to omit or neglected to provide. *State v. Jones*, 587 N.W.2d 854, 856 (Minn.App. 1999).

Thus, we conclude that, under *LaMere* and *Gerdes*, possession of an inoperable gun does fall within the prohibition of Minn.Stat. § 609.165, subd. 1b(a).

## II.

Appellant argues that the legislature's statement of policy in Minn.Stat. § 624.711, which renounces any intent to regulate shotguns, precludes a prosecution of a felon for possessing a shotgun. That statute, which is entitled "Declaration of policy," states:

> It is not the intent of the legislature to regulate shotguns, rifles and other long-guns of the type commonly used for hunting and not defined as pistols or semiautomatic military-style assault weapons, or to place costs of administration upon those citizens who wish to possess or carry pistols or semiautomatic military-style assault weapons lawfully, or to confiscate or otherwise restrict the use of pistols or semiautomatic military-style assault weapons by law-abiding citizens.

Minn.Stat. § 624.711 (2000).

The state argues that appellant has waived any claim that Minn.Stat. § 624.711 bars this prosecution because he failed to raise that issue in the district court. This court generally will not address issues raised for the first time on appeal. *State v. Sorenson*, 441 N.W.2d 455, 457 (Minn.1989). But we may do so if it is in the interests of justice and does not unfairly surprise the other party. *Id.* Because the application of section 624.711 does not pose a novel legal issue or involve any fact issue that would benefit by prior consideration by the district court, we will address the issue in the interests of justice.

This court has already held that the statement of policy in Minn.Stat. § 624.711 does not preclude the state from prosecuting a felon for possessing a shotgun. *Dendy*, 598 N.W.2d at 7. Appellant attempts to distinguish *Dendy* or to avoid its holding in several ways.

In *Dendy*, the defendant was charged under Minn.Stat. § 624.713, subd. 1(b) (1998), with possessing a "firearm" after

police found a shotgun at his home. *Id.* at 6. The district court ruled that Minn.Stat. § 624.713, subd. 1(b), did not apply to possession of a shotgun, citing the policy statement in Minn.Stat. § 624.711 regarding the regulation of shotguns. *Id.* This court acknowledged

> a conflict between the policy declaration [in Minn.Stat. § 624.711] that the legislature does not intend to regulate shotguns used for hunting, and the 1994 amendment prohibiting certain persons from possessing pistols, assault weapons, and any other firearm, which is now codified at Minn.Stat. § 624.713. The provisions contradict each other and therefore are irreconcilable.

*Id.* at 7. The Dendy court resolved the conflict by applying two rules of statutory construction: (1) a later-enacted law prevails over one enacted earlier; and (2) a more specific provision prevails over one that is more general. *See id; see generally State ex rel. McMaster v. Benson,* 495 N.W.2d 613, 614 (Minn.App.1993) (citing general rule that law last enacted prevails), *review denied* (Minn. Mar. 11, 1993); *State v. Lewandowski,* 443 N.W.2d 551, 553 (Minn.App.1989) (noting rule that specific statute controls over general statute absent manifest legislative intent to the contrary).

Appellant argues that *Dendy* is distinguishable because the defendant there was charged under the felon-in-possession provisions of chapter 624, while appellant was charged with violating Minn.Stat. § 609.165, subd. 1b(a). But the same rules of statutory construction apply to both statutes. And section 609.165, subd. 1b(a), which governs eligibility to possess firearms following a felon's restoration to civil rights, is even more specific than the general felon-in-possession prohibition in Minn.Stat. § 624.713, subd. 1(b). Moreover, Minn.Stat. § 609.165 has been amended several times since the 1975 enactment of Minn.Stat. § 624.711 and also since the minor 1993 amendment to section 624.711. *See* 1994 Minn. Laws ch. 636, art. 3, § 9 (adding subd. 1b to section 609.165); 1993 Minn. Laws ch. 326, art. 1, § 22 (adding reference to semi-automatic military assault weapons to section 624.711). Thus, the same reasoning applied in *Dendy* to a chapter 624 felon-in-possession prosecution applies to appellant's prosecution under Minn.Stat. § 609.165, subd. 1b(a).

Appellant also argues that the dissenting opinion in *State v. Wasson,* 615 N.W.2d 316 (Minn.2000), requires a result different from *Dendy.* But *Wasson* involved a challenge to a no-knock provision in a search warrant. *Id.* at 318. In a footnote, Justice Gilbert, who disagreed with the majority's conclusion that there were grounds for a no-knock entry, indicated that Minn. Stat. § 624.711 specifically exempts certain weapons "from the 'felon in possession' bar to owning weapons." *Id.* at 327 n. 2. This statement, in a separate opinion, not representing the ruling of the court as a whole, on a matter tangential to the disputed issue in the case, does not overrule *Dendy. See generally State ex rel. Foster v. Naftalin,* 246 Minn. 181, 208–09, 74 N.W.2d 249, 266 (1956) (explaining when dictum in "a court's opinion" is entitled to deference).

### III.

Finally, appellant argues that the evidence presented at trial was insufficient to support his conviction for uttering terroristic threats. In reviewing a claim of insufficient evidence, this court conducts a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the jurors to reach the verdict that they did. *State v.*

*Webb,* 440 N.W.2d 426, 430 (Minn.1989). The reviewing court must assume the jury believed the state's witnesses and disbelieved any evidence to the contrary. *State v. Moore,* 438 N.W.2d 101, 108 (Minn. 1989).

Appellant argues that his brother Paul's testimony at trial was too vague to establish that appellant threatened to "chop his head off" or that the statement, if made, would have had a reasonable tendency to create apprehension that it would be carried out. *See* Minn.Stat. § 609.713, subd. 1 (2000) (prohibiting threats made with purpose of terrorizing another or in reckless disregard of risk of causing such terror); *see generally State v. Murphy,* 545 N.W.2d 909, 915 (Minn.1996) (discussing elements of terroristic threats in context of claim that physical acts alone could not constitute terroristic threats).

But Paul Knaeble did not deny that appellant threatened him, he merely claimed confusion and lack of precise memory as to the threat. The state presented the testimony of two officers that Paul told them that appellant had threatened to "chop his head off." In light of this evidence, along with Paul Knaeble's failure to deny at trial that appellant made the statements or to deny that he felt threatened, there is no lack of proof that the threat was made. *Cf. State v. Lehikoinen,* 463 N.W.2d 770, 772 (Minn.App.1990) (holding that recanting victim's admission that she told police of the assault, without police testimony about her statement, was insufficient evidence to support conviction).

Appellant's argument that his statement to his brother that he would "chop his head off" was not a terroristic threat is without merit. Although a person may flippantly or thoughtlessly say to another that he is going to "chop his head off," appellant had been breaking windows and otherwise acting in a violent manner be-fore making the statement and was still visibly upset 40 minutes later when the police arrived, trying to knock his brother's cap off and acting belligerently with the police. These circumstances establish that appellant's words were not merely flippant or spoken in jest. Therefore, we conclude that the evidence is sufficient to support the conviction.

### DECISION

Appellant's possession of an inoperable shotgun fits within the statutory prohibition in Minn.Stat. § 609.165, subd. 1b(a). And a prosecution for that offense is not barred by Minn.Stat. § 624.711. Finally, the evidence is sufficient to support the conviction of terroristic threats.

**Affirmed.**