*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1502**

State of Minnesota,
Respondent,

vs.

Yia Her,
Appellant.

**Filed September 8, 2015
Affirmed
Schellhas, Judge**

Ramsey County District Court
File No. 62-CR-13-4088

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Thomas R. Ragatz, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Melissa Sheridan, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Schellhas, Judge; and Larkin, Judge.

# UNPUBLISHED OPINION

**SCHELLHAS**, Judge

Appellant challenges his convictions of second-degree intentional murder and attempted second-degree intentional murder, arguing that the record contains insufficient

evidence to support his convictions. Appellant also argues that he is entitled to a new trial on the basis that the jury instructions were erroneous. We affirm.

## FACTS

St. Paul police officers arrived at Malina's Sports Bar in the early morning hours of June 9, 2013, in response to a call about a shooting. The first officer to arrive spoke with S.V., who reported that he had been shot. The officer then found another man, V.M., lying on the floor near the entryway of the bar. V.M., who was the bar owner, had sustained a gunshot wound to his head. A woman, M.M., was attending to V.M. and holding three spent shell casings. The officer observed that a third man, B.T., also had been shot. V.M. died from his injuries shortly after admission to a hospital; S.V. and B.T. survived.

Police determined that appellant Yia Her was the registered owner of a car parked near the front of the bar. Eyewitnesses informed police that Her had "started the trouble" at the bar, and the bar's records reflected charges to Her's credit card. Officers arrested Her and recovered a white shirt with apparent blood on it. During a recorded police interview, Her said that he had argued with the bar owner over $20 he paid to play pool without receiving pool-table time. Her then called his brother-in-law, Cheng Vang, and asked him to bring a gun to the bar to scare V.M. into returning the $20. After Vang arrived, Her fought with V.M. and others in the bar, heard multiple gunshots, and saw V.M. fall down. Her said that, at that time, he did not know that Vang had brought a gun to the bar or who fired the gunshots. Her left the bar in Vang's car because he could not

get into his own car. Officers located and arrested Vang and recovered the car that they believed Vang had driven away from the bar.[1]

Respondent State of Minnesota charged Her as an accomplice with one count of second-degree intentional murder and two counts of attempted second-degree intentional murder, citing Minn. Stat. § 609.05, subd. 1 (2012), in all three counts. At Her's jury trial, the state presented testimony from eyewitnesses, police officers, Minnesota Bureau of Criminal Apprehension agents, a physician, and a medical examiner. The state offered as evidence a transcript and video recording of Her's police interview and video surveillance footage of the bar fight and shooting.

The district court instructed the jury on accomplice liability under Minn. Stat. § 609.05, subds. 1, 2 (2012), and on the lesser-included offense of felony murder based on felony assault and felony terroristic threats. The jury returned guilty verdicts on all three counts involving second-degree intentional murder. The court sentenced Her to 367 months' imprisonment for his conviction of second-degree intentional murder and to 193 months' concurrent imprisonment and 173 months' concurrent imprisonment for his two convictions of attempted second-degree intentional murder.

This appeal follows.

---

[1] Vang pleaded guilty to one count of second-degree intentional murder and two counts of attempted second-degree intentional murder.

**D E C I S I O N**

*Sufficiency of the evidence*

Her argues that the record contains insufficient evidence to prove that he intended to aid and abet Vang's crimes or reasonably foresaw that Vang would commit second-degree intentional murder and attempted second-degree intentional murder. "When the sufficiency of evidence is challenged, [appellate courts] review the evidence to determine whether, given the facts in the record and the legitimate inferences that can be drawn from those facts, a jury could reasonably conclude that the defendant was guilty of the offense charged." *State v. Fairbanks*, 842 N.W.2d 297, 306–07 (Minn. 2014) (quotation omitted). Appellate courts undertake "a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." *State v. Ortega*, 813 N.W.2d 86, 100 (Minn. 2012) (quotation omitted).

"The State ordinarily proves a criminal defendant's mental state by circumstantial evidence." *State v. Bahtuoh*, 840 N.W.2d 804, 809 (Minn. 2013).

> When a challenge is to the sufficiency of the circumstantial evidence supporting a conviction, [appellate courts] apply the following two-step analysis:
>
> > First, [appellate courts] must identify the circumstances proved, giving deference to the jury's acceptance of the proof of these circumstances and rejection of evidence in the record that conflicted with the circumstances proved by the State. Second, [appellate courts] independently examine the reasonableness of all inferences that might be drawn from the circumstances proved, including inferences

4

consistent with a hypothesis other than guilt. Thus, [appellate] review consists of determining whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt.

*Id.* (quoting *State v. Anderson*, 789 N.W.2d 227, 241−42 (Minn. 2010) (quotations and citations omitted in original)).

"A defendant is guilty as an accomplice of an offense committed by another person if the defendant 'intentionally aids, advises, hires, counsels, or conspires with or otherwise procures [another person] to commit' the offense." *Id.* at 810 (alteration in original) (quoting Minn. Stat. § 609.05, subd. 1). The supreme court has "identified two elements for determining whether a defendant's presence 'intentionally aids' another in committing a crime: (1) the defendant knew that the alleged accomplices were going to commit a crime; and (2) the defendant intended his presence or actions to further the commission of that crime." *State v. Taylor*, ___ N.W.2d ___, ___, No. A14-0942, slip op. at 20−21 (Minn. Aug. 26, 2015) (quotations omitted).

"To impose liability under the aiding and abetting statute, the state must show some knowing role in the commission of the crime by a defendant who takes no steps to thwart its completion." *State v. Ostrem*, 535 N.W.2d 916, 924 (Minn. 1995) (quotation omitted). "Mere presence at the scene of a crime does not alone prove that a person aided or abetted . . . ." *Id.* But "active participation in the overt act which constitutes the substantive offense is not required . . . ." *Id.*

A jury may infer the requisite state of mind from a variety of facts, including presence at the scene of the crime, a close association with the principal offender before and after the

> crime, a lack of objection or surprise under the circumstances, and flight from the scene of the crime with the principal offender.

*Bahtuoh*, 840 N.W.2d at 810; *see also State v. Hawes*, 801 N.W.2d 659, 668 (Minn. 2011) ("To be guilty of aiding and abetting a crime, the defendant does not need to have participated actively in the actual commission of the crime.").

Under the first step of the sufficiency-of-the-circumstantial-evidence analysis, we identify the circumstances proved by the state, which are as follows. Her argued with V.M. over $20 that he had paid to use a pool table at V.M.'s bar, threw a pool cue to the floor, and left the bar. Assuming that Vang might have a gun and that Vang would back him up in the event of an altercation, Her called Vang and asked him to bring a gun to the bar to scare V.M. into returning the $20. Her and Vang met in the bar parking lot and approached the door to the bar, and Her banged, kicked, cursed, and demanded entrance. When allowed entrance, Her confronted V.M. and said something to the effect that he was going to kill V.M. or that V.M. was going to die. Her and V.M. scuffled, joined by multiple people. Vang pulled out a gun, aimed it at V.M.'s head, and fired. Vang then pointed the gun at S.V. and shot him. Vang fell to the ground, and Her kicked a man off of Vang. Vang regained his footing and shot B.T.

Additionally, the state proved that Her did not render any aid to the shooting victims; he walked toward the parking lot, ran to his car and unsuccessfully attempted to open its door, and then ran to Vang's car and fled with Vang. Prior to Her's arrest, he told his sister-in-law that someone needed to watch his kids because he was going to leave for a while.

6

Under the second step of the sufficiency-of-the-circumstantial-evidence analysis, we determine whether the circumstances proved are consistent with Her's guilt and inconsistent with any rational hypothesis aside from his guilt. Her argues that the circumstances proved support a rational hypothesis that he did not know prior to the shooting that Vang had brought a gun; he did not reasonably foresee that Vang would use the gun to threaten, assault, or shoot the three victims; and he did not intend to further Vang's crimes. We disagree and conclude that the circumstances proved are consistent with Her's guilt and inconsistent with any rational hypothesis aside from his guilt. Her's admitted formation of the basic criminal plan—i.e., that Vang would use a gun to scare V.M.—was sufficient to prove that Her intended to aid and abet at least one predicate felony and that Vang's use of the gun to shoot people was reasonably foreseeable to Her. *See State v. Jackson*, 726 N.W.2d 454, 457–58, 460–61 (Minn. 2007) (holding that sufficient evidence supported defendant's conviction of murder charged under section 609.05, subdivision 2, where "[defendant], as an accomplice to the attempted robbery, was aware of the basic details of the plan to use force or to threaten the use of force" and knew that accomplice was armed). The evidence was sufficient to support Her's convictions.

### Jury instructions

Her argues that the district court erred by instructing the jury on accomplice liability under section 609.05, subdivision 2. "While district courts have broad discretion to formulate appropriate jury instructions, a district court abuses its discretion if the jury

instructions confuse, mislead, or materially misstate the law." *Taylor*, slip op. at 19 (quotation omitted).

We begin by noting that Her invited any error in the jury instructions. "The invited error doctrine prevents a party from asserting an error on appeal that he invited or could have prevented in the court below." *State v. Goelz*, 743 N.W.2d 249, 258 (Minn. 2007). Here, prior to swearing in the jury, the district court made a record of its decision to allow instructions on accomplice liability under section 609.05, subdivision 2. Her argued that the state was adding a new theory of accomplice liability with insufficient notice. The court suggested that the appropriate remedy, if one was necessary, would be a continuance and asked whether Her was requesting a continuance. Defense counsel conferred with Her and told the court that he was ready to proceed. Had Her requested a continuance, any error could have been prevented. We therefore review Her's argument for plain error. *See id.* ("The invited error doctrine . . . does not apply to plain errors.").

"Under the plain-error doctrine, [an appellant] "must show that there was: (1) an error; (2) that is plain; and (3) the error must affect substantial rights." *Taylor*, slip op. at 19 (quotation omitted). "An error is plain if it is clear or obvious; usually this means an error that violates or contradicts case law, a rule, or an applicable standard of conduct." *State v. Vang*, 847 N.W.2d 248, 261 (Minn. 2014). "The third prong is satisfied if . . . there is a reasonable likelihood that the error had a significant effect on the jury's verdict." *Id.* "Even if [an appellant] satisfies the first three prongs of the plain-error doctrine, [appellate courts] may correct the error only if it seriously affects the fairness,

integrity, or public reputation of judicial proceedings." *Taylor*, slip op. at 19 (quotations omitted).

Minnesota Statutes section 609.05, subdivision 2, is labeled "expansive liability." *Id.* at 21. "The expansive liability subdivision states that a person liable for aiding and abetting is also liable for any other crime committed in pursuance of the intended crime if reasonably foreseeable by the person as a probable consequence of committing or attempting to commit the crime intended." *Id.* at 21−22 (emphasis omitted) (quotation omitted). "[T]he statute requires that the other crimes committed in pursuance of the intended crime be reasonably foreseeable by [the defendant]." *Id.* at 22 (emphasis omitted) (quotation omitted). Her argues that the court erred by including the expansive-liability instruction because the state provided insufficient notice that it was pursuing a theory of criminal liability under that subdivision and insufficient notice of the predicate offenses it was alleging that Her aided and abetted under section 609.05, subdivision 1 (intended crimes).

In *State v. DeVerney*, "[a]t the close of the state's case, the state indicated that it would seek aiding and abetting instructions under both subdivisions 1 and 2, and at the close of all the evidence, the trial court instructed the jury on both." 592 N.W.2d 837, 845 (Minn. 1999). "DeVerney objected, arguing that because the indictment did not include the subdivision 2 theory, he had not had an opportunity to prepare a defense." *Id.* In addressing DeVerney's argument, the supreme court applied Minn. R. Crim. P. 17.05. *Id.* at 846; *see also Ostrem*, 535 N.W.2d at 920 (applying rule 17.05 to determine whether district court erred by submitting case to jury on accomplice-liability theory under section

9

609.05, subdivision 1, despite complaint's failure to cite section 609.05). Under rule 17.05, "[t]he court may permit an indictment or complaint to be amended at any time before verdict or finding if no additional or different offense is charged and if the defendant's substantial rights are not prejudiced." Minn. R. Crim. P. 17.05. "[T]he matter of allowing amendments to complaints under Minn.R.Crim.P. 17.05 is in the sound discretion of the trial judge." *Gerdes v. State*, 319 N.W.2d 710, 712 (Minn. 1982).

In applying rule 17.05, we first determine whether the state charged an additional or different offense. "[A]ccomplice liability is a theory of criminal liability, not an element of a criminal offense or separate crime." *Dobbins v. State*, 788 N.W.2d 719, 729–30 (Minn. 2010); *see also State v. Britt*, 279 Minn. 260, 263, 156 N.W.2d 261, 263 (1968) (agreeing with district court that "there is no separate crime of criminal liability for a crime committed by another person"). "[The supreme court] ha[s] long held that aiding and abetting is not a separate substantive offense and can be added at any point prior to a verdict or finding." *DeVerney*, 592 N.W.2d at 846. The supreme court also has held that a jury may convict a defendant on a theory of accomplice liability even if the state altogether fails to allege accomplice liability under section 609.05. *See, e.g.*, *Ostrem*, 535 N.W.2d at 922–23 (rejecting argument that district court erred by submitting case to jury on accomplice-liability theory, despite state's failure to cite section 609.05 in complaint, reasoning in part that "we have previously held that a jury may convict the defendant of aiding and abetting despite the absence of 'aiding and abetting' language in the complaint"); *State v. Lucas*, 372 N.W.2d 731, 740 (Minn. 1985) (stating that "even if the indictment had not used 'aiding and abetting' language, the jury would have been free

10

to base the murder conviction on a determination that defendant was liable as an aider or abettor"); *cf. State v. DeFoe*, 280 N.W.2d 38, 40 (Minn. 1979) (rejecting argument that evidence was insufficient to support defendant's aggravated-robbery conviction where evidence proved that his accomplices committed aggravated robbery, although state failed to allege accomplice liability under section 609.05).

Here, the prosecutor asked to pursue a theory of expansive liability under the accomplice-liability statute, and the district court allowed the state to proceed under that theory and instructed the jury accordingly. The additional form of aiding and abetting and the accompanying jury instructions did not change the substantive offenses: completed and attempted second-degree intentional murder. The state therefore did not seek to charge an additional or different offense.

We next determine whether Her's substantial rights were prejudiced. "[The supreme court] ha[s] held that the opportunity to prepare a defense in a criminal case is a substantial right." *DeVerney*, 592 N.W.2d at 846; *see also State v. Dickson*, 309 Minn. 463, 467, 244 N.W.2d 738, 741 (1976) (identifying "opportunity to prepare a defense to the charge" as "a substantial right"). Here, the probable-cause portion of the complaint contains numerous statements that would form the basis for allegations of assault or terroristic threats, providing Her actual notice of the state's allegations and theories. *See DeFoe*, 280 N.W.2d at 40 (concluding that state's failure to cite section 609.05 in complaint did not warrant reversal of aggravated-robbery conviction on accomplice-liability theory because "the complaint made it clear that defendant was being charged with aggravated robbery, and the reports and statements attached to the complaint made it

clear what the state basically contended had happened"). Moreover, the state referenced section 609.05, subdivision 2, about six months before trial in its memorandum opposing Her's motion to dismiss for lack of probable cause. Defense counsel also acknowledged that he was aware of the alleged verbal threats by Her to V.M. and that the prosecutor had discussed the state's theory with him the week before the trial commenced. Moreover, Her himself requested an instruction on the lesser-included offense of second-degree felony murder based on the predicate felony of terroristic threats.

And Her has not pointed to any specific way in which his defense would have changed given more notice of the state's "new" accomplice-liability theory. Her's substantial rights therefore were not prejudiced. *See DeVerney*, 592 N.W.2d at 846–47 (concluding that defendant was not prejudiced substantially by allegedly late notice of state's reliance on subdivision 2, where defendant did not "point to any specific way in which his case would have been presented differently had he been informed at the outset of the state's reliance on subdivision 2").

We conclude that the district court did not commit error by allowing the state to pursue a theory of expansive liability under section 609.05, subdivision 2, and by submitting jury instructions on that theory. We further conclude that Her has failed to meet his burden of showing that the alleged plain error affected his substantial rights. *See Goelz,* 743 N.W.2d at 258 ("The defendant generally bears the burden of persuasion with respect to the third factor.").

Her also argues that the district court erred by not including instructions on the elements of the intended crimes under section 609.05, subdivision 1, with each

instruction for completed and attempted second-degree intentional murder as an accomplice. We note that Her identifies no legal authority to support his argument. His failure to adequately brief this issue constitutes a waiver of the argument on appeal. *See State v. Bartylla*, 755 N.W.2d 8, 23 (Minn. 2008) (deeming appellant to have waived claims of error that "[we]re lacking in supportive arguments and/or legal authority" where "no prejudicial error [wa]s obvious on mere inspection" (quotation omitted)); *State v. Alvarez*, 820 N.W.2d 601, 626 (Minn. App. 2012) (declining to address argument for which appellant provided no support), *aff'd sub nom. State v. Castillo-Alvarez*, 836 N.W.2d 527 (Minn. 2013). But we still may review the argument in the interests of justice and choose to do so. *See* Minn. R. Crim. P. 28.02, subd. 3.

We first address the appropriate standard of review. Prior to instructing the jury, the district court requested that the parties make a record of any objections to the final instructions. Her objected *only* to the inclusion of jury instructions on accomplice liability under section 609.05, subdivision 2, *not* to the omission of the elements of the intended crimes with each instruction for completed and attempted second-degree intentional murder as an accomplice. Because Her did not object to the jury instructions on the grounds that he now argues on appeal, we review the instructions for plain error. *See State v. Kelley*, 855 N.W.2d 269, 273 (Minn. 2014) ("[Defendant] acknowledges that he did not object to the instruction on this specific basis, and therefore we review the instruction for plain error."); *see also State v. Bailey*, 732 N.W.2d 612, 623 (Minn. 2007) (stating that "'a party [may not] obtain review by raising the same general issue litigated

13

below but under a different theory'" (quoting *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988))).

"A district court has considerable latitude in selecting jury instructions and in selecting language for jury instructions." *Anderson*, 789 N.W.2d at 239 (citations omitted). "[A] district court's instructions must be read as a whole to determine whether they accurately describe the law." *State v. Vang*, 774 N.W.2d 566, 581 (Minn. 2009). "[Appellate courts] will not reverse where jury instructions overall fairly and correctly state the applicable law." *State v. Hayes*, 831 N.W.2d 546, 555 (Minn. 2013) (quotations omitted).

We conclude that the district court did not commit plain error by omitting the elements. The supreme court recently concluded that a district court did not commit plain error by failing to instruct the jury on the intended crime in an expansive-liability case, noting that "[the supreme court] ha[s], on at least three occasions, upheld jury instructions that did not specify the original intended crime" and collecting cases. *Taylor*, slip op. at 24. In light of this authority, we cannot conclude that the court plainly erred by not including instructions on the intended crimes with each instruction for completed and attempted second-degree intentional murder as an accomplice. *See Kelley*, 855 N.W.2d at 277 (addressing alleged plain error in accomplice-liability jury instruction and concluding "that for purposes of applying the plain-error doctrine the court examines the law in existence at the time of appellate review").

We also conclude that Her has failed to meet his burden of showing that the alleged error affected his substantial rights. *See Goelz*, 743 N.W.2d at 258. The district

court included instructions on the elements of felony assault and felony terroristic threats with the instructions for felony murder. The court also instructed the jury that "[it] must consider the[] instructions as a whole and regard each instruction in light of all the others" and that "the order in which the instructions are given is of no significance." During closing argument, the prosecutor stated that assault and terroristic threats were the intended crimes under section 609.05, subdivision 1. "[R]ead as a whole," the jury instructions included the elements of the intended crimes in a manner "that c[ould] be understood by the jury." *See Anderson*, 789 N.W.2d at 239. Therefore, "[e]ven were we to assume that the district court committed plain error, it could not have affected a substantial right." *See Taylor*, slip op. at 24 (concluding that third prong of plain-error doctrine was not satisfied where "[t]he State and its witnesses made very clear" what the intended crime was).

**Affirmed.**