**STATE of Minnesota, Respondent,**

v.

**James Robert DAVIS, Appellant.**

No. C9–95–289.

Court of Appeals of Minnesota.

Dec. 5, 1995.

Review Denied Jan. 31, 1996.

Hubert H. Humphrey, III, Attorney General, Susan Gaertner, Ramsey County Attorney, and Mark N. Lystig, Assistant County Attorney, St. Paul, for Respondent.

John M. Stuart, State Public Defender and Lawrence Hammerling, Deputy State Public Defender, Minneapolis, for Appellant.

Considered and decided by LANSING, P.J., and PARKER and NORTON, JJ.

## OPINION

PARKER, Judge.

The district court found James Davis guilty of second-degree assault. Davis challenges his conviction, claiming the evidence was insufficient to support it. Davis also contends that it was an abuse of the court's discretion to depart upward durationally in sentencing. We affirm.

## FACTS

On June 7, 1994, three witnesses observed Davis assaulting Romanita Hopkins while he was holding his and Hopkins' child. Patricia Callahan testified that she saw Davis slapping Hopkins while she was down on all fours "like a dog." Callahan saw Davis kick Hopkins hard two times in the side as if he were "jump-starting a Harley."

Maggie Clare testified that she heard a man's voice saying, "Get up, you bitch." She saw Hopkins trying to get away from Davis. Clare saw Davis kick Hopkins in the stomach with great force at least three times while Hopkins was on her hands and knees, screaming in protest.

Scott Anderson saw Hopkins trying to get away from Davis while he was grabbing her to keep her from getting away. When Hopkins fell down, Davis began to assault her. Anderson saw Davis punch Hopkins five to ten times on her front, mid-torso, face, and chest, and also saw Davis kick Hopkins four to five times in her mid-torso.

When St. Paul Police Officer Mary Nash arrived on the scene, Hopkins was crying and gasping for air; she appeared to be hyperventilating and was holding her stomach. Davis told Officer Nash that Hopkins was

seven months pregnant. Officer Rothecker noted that Hopkins was having problems breathing and was throwing up.

Dr. Richard Lamon, the emergency room physician who treated Hopkins, noted swelling on her left cheek and tenderness in her left lower abdomen and left flank. Dr. Lamon noted that Hopkins appeared to be in premature labor, caused by trauma.

Based on the above evidence, the district court found Davis guilty of second-degree assault and sentenced him to an executed sentence of 45 months imprisonment, a nine-month upward departure from the presumptive sentence.

### ISSUES

I. Was the evidence sufficient to support Davis's conviction for second-degree assault?

II. Was it an abuse of discretion for the district court to impose an upward durational departure from the guidelines sentence?

### DISCUSSION

■ In assessing the sufficiency of the evidence, we conduct a painstaking review of the record, viewing the evidence in the light most favorable to the verdict, to determine whether the jury could permissibly reach that result. *State v. Webb*, 440 N.W.2d 426, 430 (Minn.1989). "[W]eighing the credibility of witnesses is the exclusive function of the jury." *State v. Pieschke*, 295 N.W.2d 580, 584 (Minn.1980). The standard of review is the same for bench trials as it is for jury trials. *State v. Lehikoinen*, 463 N.W.2d 770, 772 (Minn.App.1990).

### I.

■ Davis argues that the state failed to prove beyond a reasonable doubt that his bare hands and feet constituted a "dangerous weapon."

Second-degree assault requires that the assault be committed with a dangerous weapon. Minn.Stat. § 609.222, subd. 1 (1994). A "dangerous weapon" is defined as

any firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or great bodily harm, any combustible or flammable liquid or other device or instrumentality that, in the manner it is used or intended to be used, is calculated or likely to produce death or great bodily harm.

Minn.Stat. § 609.02, subd. 6 (1994). "Great bodily harm" is defined as

bodily injury which creates a high probability of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily harm.

*Id.*, subd. 8.

■ Depending on the circumstances of the assault, hands and feet may be dangerous weapons. *State v. Born*, 280 Minn. 306, 308, 159 N.W.2d 283, 284–85 (1968); *see also State v. Mings*, 289 N.W.2d 497, 497–98 (Minn.1980) (affirming conviction of assault with a dangerous weapon where defendant kicked victim around the head and chest with his cowboy boots); *State v. Jurgens*, 424 N.W.2d 546, 553–54 (Minn.App.1988) (hands and feet may be dangerous weapons), *review denied* (Minn. July 6, 1988). Whether a defendant's hands or feet were used as dangerous weapons is a question of fact. *Born*, 280 Minn. at 308, 159 N.W.2d at 284–85.

Davis asserts that in determining whether a hand and foot assault amounts to a dangerous weapon assault, this court should conduct an injury-based analysis. Davis claims that the *Born* court discussed the extensive injuries of the victim in determining that hands and feet were dangerous weapons.

Contrary to Davis's assertion, the *Born* court did not focus on the victim's injuries in concluding that hands and feet were dangerous weapons under the circumstances. The court stated:

[W]here defendant pursued his victim as he sought to escape and, overtaking him, used his fist to knock him to the floor and his feet to stomp him as he lay there without effective means of defense, the jury could reasonably find that defendant employed an instrumentality which was dangerous in the sense that the assault perpetrated was likely to produce a protracted impairment of the functions of the

members or organs of the individual subjected to this extraordinary treatment.

*Born,* 280 Minn. at 308, 159 N.W.2d at 285.

The facts of the *Born* case are similar to the facts of the present case. Here, one witness testified that he watched Hopkins trying to get away and Davis grabbing her to keep her from getting away. Witnesses also testified that Davis kicked Hopkins several times while she was on her hands and knees. As was the victim in the *Born* case, Hopkins was "without effective means of defense."

■ Conducting an injury-based analysis, as Davis urges this court to do, is not required by law because bodily injury is not an element of second-degree assault. To be convicted of second-degree assault, the defendant must have used a weapon or an instrumentality that "is calculated or likely to produce death or great bodily harm." Minn. Stat. § 609.02, subd. 6. Davis kicked Hopkins several times with great force while she was on her hands and knees. One witness described the assault as "brutalization," and another witness felt traumatized just testifying about the assault. Based on this evidence, the district court could reasonably conclude that Davis used an instrumentality that was "calculated or likely to produce death or great bodily harm."

■ Because bodily injury is not an element of second-degree assault, hands and feet can constitute dangerous weapons even if the victim does not suffer great bodily harm. We conclude that the evidence supports the district court's finding that Davis used his hands and feet in a manner likely to produce death or great bodily harm.

## II.

■ Davis argues that the district court erred by departing from the Minnesota Sentencing Guidelines and sentencing him to nine months longer than the presumptive sentence. The decision to depart from sentencing guidelines rests within the district court's discretion and will not be reversed absent a clear abuse of that discretion. *State v. Garcia,* 302 N.W.2d 643, 647 (Minn.1981). Upward departure is within the sentencing court's discretion only if "substantial and compelling" aggravating circumstances are present. *Id.* Substantial and compelling circumstances are those that make the conduct significantly more or less serious than that typically associated with the crime in question. *State v. Cermak,* 344 N.W.2d 833, 837 (Minn.1984). We hold that an upward departure is warranted on all three of the grounds cited by the district court.

One aggravating factor that may be used, and was noted by the sentencing judge as a reason for departure, is that "[t]he victim was treated with particular cruelty for which the individual offender should be held responsible." Minn.Sent.Guidelines II. D.2.b.(2). The evidence shows that Davis kicked Hopkins in the abdomen when he knew she was pregnant and while she was down on the ground in a helpless position. One witness described the assault as "brutalization." Dr. Lamon testified that the assault caused Hopkins to go into premature labor which, if not stopped, could have resulted in the premature birth and probable death of the fetus. The doctor also said that kicking a pregnant woman in the abdomen poses a risk of causing rupture or bleeding of the uterus and may lead to death. Based on this evidence, we conclude that a departure based on "particular cruelty" is justified.

■ Another ground for departure is the particular vulnerability of the victim. Minn.Sent.Guidelines II.D.2.b.(1). Pregnancy can make a victim particularly vulnerable. *State v. Wickstrom,* 405 N.W.2d 1, 6–7 (Minn. App.1987) (affirming an upward departure based partly on victim's particular vulnerability because she was eight months pregnant), *review denied* (Minn. June 30, 1987). We conclude that because Hopkins was seven months pregnant, she was particularly vulnerable, and thus a departure based on this factor is justified.

■ Finally, a departure can be justified if the assault is more serious than the normal assault. *State v. Peterson,* 329 N.W.2d 58, 60 (Minn.1983). The trial court specifically assigned this reason for departure as well. We hold that because this assault was committed not only against Hopkins but also against her unborn child and in the presence of her other

child, an upward departure can be based on this factor as well. *See Wickstrom,* 405 N.W.2d at 7 (presence of victim's child during the assault is an aggravating factor).

## DECISION

The evidence is sufficient to support Davis's conviction for second-degree assault. The district court did not abuse discretion in ordering an upward departure of nine months.

**Affirmed.**