STATE of Minnesota, Respondent,

v.

Jack Allen BASTING, Appellant.

No. C5–96–493.

Supreme Court of Minnesota.

Dec. 18, 1997.

Maureen Williams, Law Office of Maureen Williams, Minneapolis, for appellant.

Melissa Elledge, Asst. Ramsey County Atty., St. Paul, for respondent.

## OPINION

STRINGER, Justice.

Defendant Jack Basting challenges his conviction for second-degree assault with a dangerous weapon. The circumstances of his conviction arose from a confrontation with his ex-wife's boyfriend. Jack Basting admits to punching the boyfriend twice in the face, but claims that his fist did not constitute a dangerous weapon. The trial court determined that Basting's left fist was a dangerous weapon because of Basting's status as a professional boxer. Likewise, the court of appeals affirmed, again relying on Basting's professional boxing experience. Under our case law and under Minnesota's statutory definitions however, the proper legal standard for determining whether a fist or a foot is a dangerous weapon includes a broader spectrum of considerations than simply an assailant's athletic career. This court uses a de novo standard of review in determining whether the court below erred in its application the law. *Art Goebel, Inc. v. North Suburban Agencies,* 567 N.W.2d 511, 515 (Minn. 1997). Because we conclude that the courts below misapplied the proper legal standard, we reverse in part, affirm in part, and remand.

On March 9, 1995, Jack Basting and his girlfriend, Julia Ervin, went out to dinner to celebrate Ervin's birthday and arrived home at approximately 1:00 a.m. While they were out, Jack Basting's ex-wife, Theresa Basting, left a message on his answering machine indicating that there might be a problem with their daughter, Shanna. Upon hearing the message, Jack Basting called his ex-wife but received no answer. Worried, he and Ervin drove to Theresa Basting's house where she lived with her boyfriend, Brian Bowling, and her three children from her marriage with Jack Basting.

When they arrived, Ervin waited in the Jeep while Jack Basting went to check on his children. The door to the house was standing open and neither Theresa Basting nor Bowling were home. Jack Basting went inside and found his children sleeping safely. Meanwhile, Bowling and Theresa Basting had returned home and Theresa Basting approached the Jeep and began banging her fists on the window and shouting at Ervin, who was still inside the Jeep.

There was conflicting testimony as to what occurred next. According to Jack Basting and Ervin, as Jack Basting emerged from the house and approached his Jeep, Bowling walked over to him and, without warning, punched him on the side of the face. Jack Basting testified that he was stunned and just "reacted" by punching Bowling twice in the face. Theresa Basting, however, testified that while she saw Jack Basting hit Bowling, she never saw Bowling strike Jack Basting. Theresa Basting also testified that Jack Basting tried to kick Bowling, but she stopped him by jumping on his back, an account Ervin denied. Bowling, who is 6 feet tall and weighs 200 pounds, suffered a broken nose and a deep cut requiring 12 stitches.

At the time of the altercation, Jack Basting had almost 20 years of professional and amateur boxing experience. He was 39 years old, 5 feet, 10 inches tall, and weighed 195 pounds. Although he had fought only four bouts in the last five years, he continued to train regularly. Basting testified that he can hit harder than an average man and that he is trained to hit in order to disable his opponent.

Basting was subsequently charged with (1) one count of assault in the first degree in violation of Minn.Stat. § 609.221 (1996);[1] (2) two counts of assault in the second degree in violation of Minn.Stat. § 609.222, subds. 1 and 2 (1996);[2] (3) one count of assault in the third degree in violation of Minn.Stat. § 609.223, subd. 1 (1996);[3] and (4) one count of possession of a firearm by a felon in violation of Minn.Stat. § 624.713 (1996).[4]

After a court trial, Basting was found not guilty of first degree assault and guilty on all of the remaining charges. The court imposed a 36 month executed sentence for second-degree assault with a dangerous weapon[5] and felon in possession of a firearm.

---

1. Minnesota Statutes § 609.221 provides:

   Assault in the first degree
   Whoever assaults another and inflicts great bodily harm may be sentenced to imprisonment for not more than 20 years or to payment of a fine of not more than $30,000, or both.

2. Minnesota Statutes § 609.222 provides:

   Assault in the second degree
   Subdivision 1. Dangerous weapon. Whoever assaults another with a dangerous weapon may be sentenced to imprisonment for not more than seven years or to payment of a fine of not more than $14,000, or both.
   Subd. 2. Dangerous weapon; substantial bodily harm. Whoever assaults another with a dangerous weapon and inflicts substantial bodily harm may be sentenced to imprisonment for not more than ten years or to payment of a fine of not more than $20,000, or both.

3. Minnesota Statutes § 609.223 provides:

   Assault in the third degree
   Subdivision 1. Substantial bodily harm. Whoever assaults another and inflicts substantial bodily harm may be sentenced to imprisonment for not more than five years or to payment of a fine of not more than $10,000, or both.

4. There was no gun involved in the assault. This charge resulted from Basting's possession of a pistol at the time of his arrest four days after the assault. Minnesota Statutes § 624.713 provides that certain people are ineligible to have pistols or semiautomatic military-style assault weapons, including a person who has been convicted of a crime of violence unless 10 years have elapsed. Basting had been convicted of assault in the second degree within the past 10 years.

5. Because this was Basting's second offense with a dangerous weapon, he was sentenced pursuant to Minn.Stat. § 609.11 (1996) which provides:

   Minimum sentences of imprisonment
   Subd. 4. Dangerous weapon. Any defendant convicted of an offense listed in subdivision 9 in which the defendant or an accomplice, at the time of the offense, used, whether by brandishing, displaying, threatening with, or otherwise employing, a dangerous weapon other than a firearm, shall be committed to the commissioner of corrections for not less than one year plus one day, nor more than the maximum sentence provided by law. Any defendant convicted of a second or subsequent offense in which the defendant or an accomplice, at the time of the offense, used a dangerous weapon other than a firearm, shall be committed to the commissioner of corrections

The two other assault charges were dismissed as lesser included offenses.

Basting appealed his conviction claiming insufficient evidence and the court of appeals affirmed. Basting now appeals to this court asserting that his fist was not a "dangerous weapon" as required for second degree assault. Basting also alleges that the state failed to disprove his self-defense claim and that his federal and state constitutional rights were violated.

## I.

We begin by addressing Basting's claim that the courts below erred in concluding that his fist was a dangerous weapon. The elements of Basting's assault conviction are: (1) an assault; (2) use of a dangerous weapon; and (3) infliction of substantial bodily harm.[6] 10 Minn. Dist. Judges Ass'n, *Minnesota Practice,* CRIMJIG 13.06 (3rd ed. Supp.1997); Minn.Stat. § 609.222, subd. 2. A dangerous weapon includes "any * * * device or instrumentality that, in the manner it is used or intended to be used, is calculated or likely to produce death or great bodily harm."[7] Minn.Stat. § 609.02, subd. 6 (1996). The issue then, is whether Basting used or intended to use his fist *in a manner* calculated or likely to cause great bodily harm.

It is well-settled in Minnesota that under some circumstances, a fist or a foot may constitute a dangerous weapon. *State v. Born,* 280 Minn. 306, 159 N.W.2d 283 (1968). While there are no specifically enumerated factors essential to determining whether a fist or a foot is a dangerous weapon, in prior cases appellate review has focused on a variety of factors such as the strength and size of the aggressor and the victim, the vulnerability of the victim, the severity and duration of the attack, the presence or absence of victim provocation, and the nature and the extent of the injuries. *See Born,* 159 N.W.2d 283; *State v. Mings,* 289 N.W.2d 497 (Minn.1980) *reh'g denied,* (Mar. 25, 1980); *State v. Davis,*

540 N.W.2d 88 (Minn.App.1995), *pet. for rev. denied* (Jan. 31, 1996).

The circumstances in which Minnesota courts have found that a defendant's hands or feet constitute a dangerous weapon have involved particularly brutal and prolonged attacks against vulnerable and sometimes defenseless victims. For example, in *Born* the defendant, without provocation, began shaking and pushing the victim. 280 Minn. at 307, 159 N.W.2d at 284. As the victim tried to escape, the defendant chased him, knocked him down with his fist and kicked him as he was lying on the floor. *Id.* The victim was hospitalized for five days and could not return to work for two weeks. *Id.* Similarly, in *State v. Mings,* a fight ensued between the defendant and the victim. 289 N.W.2d at 498. The defendant, who was wearing cowboy boots, continued to beat and kick the victim numerous times about his head and chest after the victim was unconscious. *Id.* Still more malicious was the assault in *State v. Davis,* 540 N.W.2d at 89. There, the victim was 7 months pregnant at the time defendant attacked her. When she tried to run from the defendant, he grabbed her and she fell to the ground on her hands and knees. *Id.* at 89–90. He then slapped her and repeatedly kicked her in the side as if he was "jump-starting a Harley." *Id.* at 89. One witness saw the defendant punch the victim five to ten times in her face, torso and chest. *Id.*

In stark contrast, here the assault was of only momentary duration, Basting struck Bowling only twice and left the scene shortly thereafter, Basting and Bowling were of approximately equal height and weight, the incident took place in early morning hours in a moment of confusion, and prior to the brief altercation there were no words of provocation exchanged between them. While Bowling did suffer a broken nose and a cut on his face, unlike the victims in *Born, Davis,*

---

for not less than three years nor more than the maximum sentence provided by law.

6. The elements of assault and infliction of substantial bodily harm are not disputed in this appeal.

7. "Great bodily harm" means "bodily injury which creates a high probability of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily harm." Minn.Stat. § 609.02, subd. 8 (1996).

and *Ming*, Bowling's injuries did not require extensive hospitalization nor was he rendered incapacitated. In addressing the definition of a dangerous weapon in *Born* we suggested that something more than "a mere injury by fist, such as is likely to occur in ordinary assault and battery" is needed. *Born*, 280 Minn. at 307, 159 N.W.2d at 284 (*quoting State v. Peters*, 274 Minn. 309, 317, 143 N.W.2d 832, 837 (1966)). Absent here are any facts indicating that the manner in which Basting used his fist rose to a level of severity beyond that involved in an ordinary assault.

■ We do not suggest however, that whether an object is a dangerous weapon turns on the nature or severity of the victim's injuries. Such a conclusion would lead to a backward analysis which would begin and end with assessing the ensuing injury, a result inconsistent with both the legislature's definition of a dangerous weapon and with the structure of the criminal second-degree assault statute, which establishes infliction of bodily harm and use of a dangerous weapon as two separate elements.[8]

The trial court's findings that Basting's left fist constituted a dangerous weapon rested upon Basting's formal training and experience as a professional boxer. Immediately after the trial court determined that Basting used his left fist to hit Bowling twice in the face, it found:

3. Defendant is a professional prize fighter, last licensed in Minnesota in 1992, but who fought professionally as recently as the Fall of 1994 outside of Minnesota. Further, Defendant continued to train as a fighter as recently as March 14, 1995.

4. The left fist of Defendant, under the facts of this case, constitutes a dangerous weapon.

No other circumstances regarding the assault were referred to in the court's factual findings.

■ Similarly, the court of appeals focused primarily on Basting's status as a professional boxer. It affirmed, stating, "[t]he facts here present a strong case that appellant's fists are dangerous weapons, given that he is a professional boxer." *State v. Basting*, C5–96–493, slip op. at 3, 1997 WL 10888 (Minn.App. Jan. 14, 1997). When determining whether an object, even an inherently dangerous object, is a dangerous weapon, the court must examine not only the nature of the object itself, but also the manner in which it was used. *See, e.g., State v. Patton*, 414 N.W.2d 572, 574 (Minn.App.1987) (stating that the defendant "brandished [a] knife *in such a manner* that the jury could have found it was used as a dangerous weapon") (emphasis added). While a defendant's prior professional athletic training may be relevant to and properly considered in a dangerous weapon analysis, it alone is not determinative. Raising the level of a defendant's criminality based on his or her career, physique, or expertise in a particular field of athletics is not consistent with the legislature's clear differentiation between assault and assault with a dangerous weapon. We hold, as a matter of law, that the manner in which Basting used his fist did not constitute the use of a dangerous weapon for purposes of an analysis under Minn.Stat. § 609.222, subd. 2.

### II.

■ We now turn briefly to Basting's assertion that the state failed to prove beyond a reasonable doubt that he did not act in self-defense when he struck Bowling. The elements of self-defense are (1) the absence of aggression or provocation on the part of the defendant; (2) the defendant's actual and honest belief that he or she was in imminent danger of death or great bodily harm; (3) the existence of reasonable grounds for that belief; and (4) the absence of a reasonable possibility of retreat to avoid the danger. *State v. McKissic*, 415 N.W.2d 341, 344 (Minn.App.1987) (citing *State v. Johnson*, 277

---

8. Minnesota's second-degree assault statute is divided into two parts, each carrying a different penalty. Minn.Stat. § 609.222. For a conviction of second-degree assault under Minn.Stat. § 609.222, subd. 1, the victim need not suffer

*any* bodily harm, but the defendant must have used a dangerous weapon. Under subdivision 2, the defendant must have used a deadly weapon *and* caused substantial bodily harm.

Minn. 368, 373, 152 N.W.2d 529, 532 (1967)); Minn.Stat. § 609.06, subd. 1(3) (1996).[9] The degree of force used in self-defense must not exceed that which appears to be necessary to a reasonable person under similar circumstances. *McKissic*, 415 N.W.2d at 344 (citing *State v. Bland*, 337 N.W.2d 378, 381 (Minn. 1983)). A defendant has the burden of going forward with evidence to support a claim of self-defense. *State v. Graham*, 371 N.W.2d 204, 209 (Minn.1985). Once it is raised, the state has the burden of disproving one or more of these elements beyond a reasonable doubt. *State v. Spaulding*, 296 N.W.2d 870, 875 (Minn.1980).

 The trial court specifically found that Basting did not act in self-defense and the court of appeals affirmed. There was conflicting testimony as to who initiated the attack, and the trial court was free to credit the testimony that was adverse to Basting's position. Furthermore, the trial court could have determined that Basting used more force than was necessary to protect himself. Viewing the evidence in a light most favorable to the verdict, the trial court's finding that Basting was not acting in self-defense when he committed the assault was not clearly erroneous.

### III.

Basting's final contention is that the courts below violated his constitutional rights when they classified his fist as a dangerous weapon "solely on the basis of [his] vocation as a professional boxer." Basting alleges that such a classification was discriminatory and in violation of the United States and Minnesota Equal Protection Clauses. Basting did not claim constitutional violations in either court below. While this court may choose to hear an issue raised for the first time to this court when the interests of justice require, in light of our ruling that Basting's fist did not constitute a dangerous weapon, the interests of justice do not require our review of Basting's equal protection issue. *Roby v. State*, 547 N.W.2d 354,

357 (Minn.1996) (citing *State v. Sorenson*, 441 N.W.2d 455, 457 (Minn.1989)).

We reverse Basting's conviction of second-degree assault with a dangerous weapon under Minn.Stat. § 609.222, subd. 2, but because the evidence is sufficient to establish that he committed an assault resulting in substantial bodily harm, his conviction is reduced to the lesser included offense of assault in the third degree in violation of Minn.Stat. § 609.223, subd. 1.

Reversed in part, affirmed in part, and remanded for resentencing for violation of Minn.Stat. § 609.223, subd. 1, assault in the third degree.

---

9. Minnesota Statutes § 609.06, subdivision 1(3) provides that "reasonable force may be used upon or toward the person of another without the other's consent when the following circumstances exist or the actor reasonably believes them to exist * * * * when used by any person in resisting or aiding another to resist an offense against the person * * *."