*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0043**

State of Minnesota,
Respondent,

vs.

Nikia Kylene Balenger,
Appellant.

**Filed November 24, 2014
Affirmed
Chutich, Judge**

Hennepin County District Court
File No. 27-CR-12-35480

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Elizabeth R. Johnston, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Gary R. Wolf, Gary Wolf Law, Minneapolis, Minnesota (for appellant)

Considered and decided by Stauber, Presiding Judge; Chutich, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CHUTICH**, Judge

Appellant Nikia Balenger appeals her convictions of second and fifth-degree assault, arguing that the evidence was insufficient to disprove an element of self-defense

beyond a reasonable doubt. Because sufficient evidence exists for the jury to have reasonably concluded that she did not act in self-defense, we affirm.

## FACTS

Appellant Nikia Balenger stabbed T.M. in the arm and cut a second victim, A.M., at a Minneapolis restaurant in August 2012. Balenger was arrested, and police later recovered a knife from where she sat in the police van. Balenger admitted that the knife was hers.

Balenger was charged with one count of third-degree assault (substantial bodily harm) and one count of fifth-degree assault (bodily harm). *See* Minn. Stat. §§ 609.223, subd. 1, .224, subd. 1(2) (2012). The complaint was later amended to add one count of second-degree assault (dangerous weapon). *See* Minn. Stat. § 609.222, subd. 1 (2012).

T.M. testified at the trial. She said that she and her group of friends were sitting at a table when Balenger came over to speak to some mutual friends. T.M. said that Balenger made a comment about a "repeat" of a previous physical altercation that the two had 15 years earlier. Balenger and T.M. began arguing, but a mutual friend stopped them. Balenger then went to the counter to order food. T.M. said that as she went to leave, her friend was talking to Balenger at the counter.

T.M. further testified that as she passed, Balenger told her "you better watch your back." T.M. said that in response, she threw water from her glass on Balenger, and Balenger charged at her with a knife. A brief fight ensued that bystanders almost immediately broke up. T.M. was taken outside, and then she realized that she had been

stabbed in the bicep and was bleeding. The stab wound was cleaned and dressed at the Hennepin County Medical Center, but it was too deep to stitch at that time.

The second victim, A.M., also testified during the state's case. She said that when she arrived at the restaurant, she saw Balenger talking to the group at the table and went to talk to T.M. A.M. heard T.M. and Balenger exchange words, but did not hear what they said. After Balenger got in line at the counter, A.M. also got in line a few people behind her to order some pizza. A.M. saw a fight break out between Balenger and T.M., and she, along with other bystanders, tried to break up the fight. A.M. said that after the initial fight between Balenger and T.M. was over, she got back in line to order food. She said that Balenger then charged at her with the knife. A.M. swung at Balenger with her hands, and Balenger swung back with the knife. A.M. was escorted out, and she then noticed that she had defensive wounds on her arm and fingertips.

Two witnesses testified on behalf of Balenger. Both were with the group at the table, and each said that T.M. initiated the verbal argument at the table. They also testified that when the physical altercation began, they did not see a knife in Balenger's hand.

Balenger testified on her own behalf. She said that T.M. began the argument at the table. Balenger said that as she was standing at the counter, she felt as if someone was pulling her hair, which she later realized was the water that T.M. threw at her. Balenger said she reacted to the water by trying to grab T.M.'s hair. Balenger said that during the fight, she felt someone pulling her hair. She said that she was scared of being pulled to the ground and kicked in the face, so she pulled a knife out of her purse. She

3

said that as T.M. was swinging at her, she saw her arm and "just reacted." She said that a few seconds passed after the fight was stopped, and then A.M. came at her. Balenger also said that during the altercation, she lost her orientation of the restaurant and felt trapped.

In addition to this testimony, the jury also viewed photos of the stab wounds, and they watched, several times, two videos showing the fights.

The district court instructed the jury on self-defense. The jury acquitted Balenger of third-degree assault but found her guilty of second-degree assault and fifth-degree assault. The district court stayed imposition of a sentence for three years and ordered Balenger to serve 180 days in the workhouse. This appeal followed.

## D E C I S I O N

Balenger claims that the evidence was insufficient to support a finding that she did not act in self-defense. She argues that she did not pull out the knife until she believed that she was going to the floor and would be kicked in the face and that retreat was unavailable. The state counters, and we agree, that sufficient evidence exists for the jury to have reasonably concluded that the state disproved at least two elements of self-defense beyond a reasonable doubt.

### A.    *Standard of Review*

This court's "review of the sufficiency of the evidence is 'limited to a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did.'" *State v. Fields*, 679 N.W.2d 341, 348 (Minn. 2004) (quoting *State v. Webb*,

4

440 N.W.2d 426, 430 (Minn. 1989)). The court assumes that "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989). "This is especially true where resolution of the case depends on conflicting testimony, because weighing the credibility of witnesses is the exclusive function of the jury." [1] *State v. Pieschke*, 295 N.W.2d 580, 584 (Minn. 1980). The verdict will not be disturbed if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was proven guilty of the offense charged. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004).

The elements of self-defense consist of:

> (1) the absence of aggression or provocation on the part of the defendant; (2) the defendant's actual and honest belief that he or she was in imminent danger of death or great bodily harm; (3) the existence of reasonable grounds for that belief; and (4) the absence of a reasonable possibility of retreat to avoid the danger.

*State v. Basting*, 572 N.W.2d 281, 285 (Minn. 1997). In addition, the degree of force used cannot exceed that which would appear to be necessary to a reasonable person under similar circumstances. *Id.* at 286; *see also* Minn. Stat. § 609.06, subd. 1(3) (2012) (authorizing use of reasonable force to resist an offense against the person). If the defendant meets her burden of going forward with evidence to support a claim of self-

---

[1] Citing New York authorities, Balenger asks the court to reweigh conflicting evidence. But appellate courts in Minnesota do not reweigh evidence. *State v. Franks*, 765 N.W.2d 68, 73 (Minn. 2009).

defense, then the state has the burden of disproving one or more of the elements beyond a reasonable doubt. *Basting*, 572 N.W.2d at 286.

### B. *Reasonable Belief of Death or Great Bodily Harm*

A self-defense claim may be negated if the state proves that it is unreasonable for the defendant to believe that the danger of death or great bodily harm is imminent. *See id.* at 285-86. This element is an objective test. *State v. Johnson*, 719 N.W.2d 619, 631 (Minn. 2006).

Sufficient evidence exists for the jury to have concluded that the state disproved this element beyond a reasonable doubt. The jury saw video of the altercation and could have concluded that it was unreasonable for a person to believe that she was in danger of death or great bodily harm from water being thrown on her. Additionally, the video showed how little time the fight took before the women were separated. Given this brevity, the jury could have reasonably discredited Balenger's claim that she only pulled the knife out *after* the fight had already begun. If the jury found that Balenger already had the knife in her hand when the fight began, it could then conclude that no reasonable person would have feared great bodily harm from having water thrown in her face.

We assume that the jury believed T.M. and disbelieved the contrary evidence Balenger presented. *See Moore*, 438 N.W.2d at 108. Viewing the evidence in the light most favorable to the verdict, sufficient evidence exists for the jury to have found beyond a reasonable doubt that Balenger's belief of imminent great bodily harm was objectively unreasonable.

6

## C.     *Retreat*

Sufficient evidence exists to support the jury's conclusion that Balenger could have retreated but did not.  *See Basting*, 572 N.W.2d at 285-86 (listing retreat as an element of self-defense to be disproven by the state).  Balenger testified that she felt trapped when the fight began and that she had nowhere that she could go.  A review of the video, however, shows that the jury could have reasonably disbelieved this testimony.

A video of the fight as seen from behind the counter shows that after T.M. walked by and threw water on Balenger, Balenger immediately charged at T.M.  Balenger could have moved backwards or even remained still.  But instead she rushed towards T.M. and physically attacked her.  The video also shows that after the initial fight with T.M., Balenger was in the center of the room.  But, even with the space to retreat, she also affirmatively engaged A.M. in the second altercation.

This evidence supports the jury's disbelief of Balenger's claim that she felt trapped and the conclusion that she had a reasonable possibility of retreat but did not take it.  Viewing the evidence in the light most favorable to the conviction, sufficient evidence in the videotape exists to allow the jury to have found that the state disproved this element of self-defense beyond a reasonable doubt.

Furthermore, a defendant cannot prevail on a claim of self-defense if she does not exercise the opportunity to retreat and continues to fight while bystanders attempt to separate the combatants.  *See In re Expulsion of I.A.L.*, 674 N.W.2d 741, 747 (Minn. App. 2004).  Both video exhibits show Balenger continuing to fight T.M. while people attempt to separate them, and then engaging A.M. after the initial fight was broken up.

7

Based on this evidence, the jury could have reasonably concluded that the state disproved this element of self-defense beyond a reasonable doubt.

### D.    *Level of Force*

Finally, the jury could also have reasonably concluded that Balenger used an unreasonable level of force. Minnesota Statutes section 609.06, subdivision 1(3), permits a person to use reasonable force to resist an offense against her. But the concept of reasonableness is critical to self-defense, and a defendant may only use the level of force reasonably necessary to prevent the harm feared. *State v. Glowacki*, 630 N.W.2d 392, 399 (Minn. 2001). Even if, as Balenger testified, the water thrown felt like her hair was being pulled, the jury could have reasonably concluded that her response—to attack with a knife—exceeded what was necessary to prevent the feared harm.

**Affirmed.**