*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0742**

State of Minnesota,
Respondent,

vs.

Orlando Delgado Espinosa,
Appellant.

**Filed April 6, 2015
Affirmed
Johnson, Judge**

Washington County District Court
File No. 82-CR-12-2567

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Pete Orput, Washington County Attorney, Robin M. Wolpert, Assistant County Attorney, Stillwater, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Lydia Villalva Lijo, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Johnson, Presiding Judge; Halbrooks, Judge; and Larkin, Judge.

## UNPUBLISHED OPINION

**JOHNSON**, Judge

A Washington County jury found Orlando Delgado Espinosa guilty of second-degree assault based on evidence that he threatened his roommate with a machete

because he believed that the man was stealing from him. On appeal, Espinosa challenges the state's evidence that he did not act in self-defense. We affirm.

**FACTS**

On June 27, 2012, Oakdale police officers arrested Espinosa after his roommate, J.S., reported that Espinosa had threatened him with a machete. The state charged Espinosa with second-degree assault with a dangerous weapon, in violation of Minn. Stat. § 609.222, subd. 1 (2010), and terroristic threats, in violation of Minn. Stat. § 609.713 (2010).

Espinosa went to trial on two days in November 2013 and raised the defense of self-defense. The state called four witnesses, including J.S.; Espinosa called one witness and testified in his own defense. The most relevant evidence was the conflicting accounts of J.S. and Espinosa.

J.S. testified that he and his fiancée, who is Espinosa's adult daughter, moved into a trailer home in May 2012. Espinosa had been living in the home for several months. On the afternoon of June 27, 2012, J.S. arrived home from work and played with his dog outside. He planned to shower and then go to his other part-time job, which started at 5:00 p.m. Espinosa was making arrangements to go fishing with his girlfriend and their six-year-old son. After Espinosa left to go fishing, J.S. went inside and realized that one of his DVDs was not in its usual place. He entered Espinosa's bedroom to look for it and found it next to the television stand. After he turned to leave the room, Espinosa appeared in the hallway outside the bedroom. J.S. testified that Espinosa appeared to be "super mad" and accused him of stealing. J.S. took slow steps away from Espinosa and

2

explained that he was searching for a DVD and was not stealing anything. Espinosa walked into the bedroom. J.S. walked away from the bedroom, with his back turned, but he heard Espinosa approaching from behind. J.S. turned toward Espinosa, and Espinosa put a machete to J.S.'s neck. Espinosa twice told J.S., "I will f---ing kill you." J.S. testified that he did not believe that he could move without being harmed by Espinosa. Eventually Espinosa released J.S. without inflicting any injuries.

Espinosa testified that when he left to go fishing, he realized that he had forgotten a cooler, so he turned around to retrieve it. Upon arriving home, he saw that his bedroom light was on. He slowly approached the bedroom window from the outside. He saw J.S. inside the bedroom, going through clothing, opening cabinet doors in the adjacent bathroom, and lifting his mattress. He saw J.S. sprawl out on the floor and peer under the TV stand. At that point, Espinosa went inside and watched J.S. search the bedroom for about 90 seconds before J.S. realized that Espinosa was there. Espinosa asked J.S. what he was doing, and J.S. said that he was looking for a DVD. Espinosa called J.S. a "liar," to which J.S. replied by knocking over two chairs and yelling, "You motherf-----g son of a b---h." J.S. then approached Espinosa with his hands out, as if he were about to hit him. Espinosa testified that J.S. clenched his fists and appeared very angry. He believed that J.S. was about to hit him and grabbed a machete for protection. Espinosa testified that he held the machete downward while standing about three to four feet away from J.S. Upon seeing the machete, J.S. walked away. Espinosa testified that he never got close to J.S., never threatened to kill him, and never placed the blade to his neck.

The jury found Espinosa guilty on both counts. The district court sentenced Espinosa to 21 months of imprisonment for second-degree assault. Espinosa appeals.

## DECISION

Espinosa argues that his conviction must be reversed because the state did not present sufficient evidence to disprove his defense of self-defense.

When considering a claim of insufficient evidence, this court conducts "a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). We must assume that "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989). "This is especially true where resolution of the case depends on conflicting testimony." *State v. Pieschke*, 295 N.W.2d 580, 584 (Minn. 1980). "We will not disturb the verdict if the jury, acting with due regard for the presumption of innocence" and the requirement of proof beyond a reasonable doubt, could reasonably conclude the defendant was guilty of the crime charged. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004) (quotation omitted).

"[R]easonable force may be used upon or toward the person of another without the other's consent when . . . used by any person in resisting or aiding another to resist an offense against the person." Minn. Stat. § 609.06, subd. 1(3) (2010). A defendant seeking acquittal on the basis of self-defense "has the burden of going forward with evidence to support his claim of self-defense." *State v. Columbus*, 258 N.W.2d 122, 123 (Minn. 1977). Once the defendant satisfies his initial burden to produce sufficient

4

evidence of self-defense, the burden shifts to the state to prove beyond a reasonable doubt that the defendant did not act in self-defense. *State v. Buchanan*, 431 N.W.2d 542, 548 (Minn. 1988). To meet its burden, the state must negate one of the four elements of the defense. *State v. Soukup*, 656 N.W.2d 424, 429 (Minn. App. 2003), *review denied* (Minn. Apr. 29, 2003). The elements include:

> (1) the absence of aggression or provocation on the part of the defendant; (2) the defendant's actual and honest belief that he or she was in imminent danger of death or great bodily harm; (3) the existence of reasonable grounds for that belief; and (4) the absence of a reasonable possibility of retreat to avoid the danger.

*State v. Basting*, 572 N.W.2d 281, 285 (Minn. 1997). In addition, the state must prove that a defendant's degree of force "exceed[ed] that which appears to be necessary to a reasonable person under similar circumstances." *Id.* at 286.

In this case, Espinosa contends that the state failed to disprove the first, second, and third elements of his defense and that the state also failed to prove that his degree of force was unreasonable. The parties do not address the fourth element.

With respect to the first element, the state was required to disprove "the absence of aggression or provocation on the part of the defendant." *Id.* at 285. Espinosa contends that the state failed to disprove the first element because "there was no dispute at trial that [J.S.], not [Espinosa], instigated the incident by being in a place where he had no right or permission to be—in [Espinosa's] bedroom." But this issue was disputed at trial. J.S. testified that he was peacefully walking away from Espinosa's bedroom when Espinosa grabbed the machete, put it to his neck, and threatened to kill him. On review, this court

5

must "construe the record most favorably to the state and . . . assume the evidence supporting the conviction was believed and the contrary evidence disbelieved." *Pieschke*, 295 N.W.2d at 584. Accordingly, this court must assume that the jury believed J.S.'s testimony that Espinosa was the aggressor and disbelieved Espinosa's contrary testimony. *See id.* If we make that assumption, the state presented sufficient evidence to disprove the first element.

With respect to the second and third elements, the state was required to disprove that Espinosa had an "actual and honest belief that he . . . was in imminent danger of death or great bodily harm" and that he had "reasonable grounds for that belief." *Basting*, 572 N.W.2d at 285. Espinosa contends that the state failed to disprove the second and third elements because, at the time of the confrontation, he was 51 years old, less than 5'3", and approximately 145 pounds, while J.S. was 29 years old, 5'11", and 230 pounds. But J.S. testified that he did not threaten Espinosa and walked slowly away from the bedroom. Despite the differences in the men's age, height, and weight, J.S.'s testimony is sufficient to prove that Espinosa was not in imminent danger of death or great bodily harm and that Espinosa did not have reasonable grounds for such a belief. Again, we must assume that the jury believed J.S.'s testimony. *See Pieschke*, 295 N.W.2d at 584. If we make that assumption, the state disproved the second and third elements.

Lastly, the state was required to disprove that Espinosa used a degree of force that was necessary to a reasonable person in similar circumstances. *Basting*, 572 N.W.2d at 286. Espinosa contends that any use of force was reasonable because J.S. was younger,

6

taller, and heavier, and because Espinosa did not actually harm J.S. At trial, J.S. testified that he was unarmed and that Espinosa approached him from behind with a machete while he tried to walk away. J.S.'s testimony shows that Espinosa's force was unreasonable in the circumstances. Again, we must assume that the jury believed J.S.'s testimony and disbelieved Espinosa's testimony. *See Pieschke*, 295 N.W.2d at 584. If we make that assumption, the state produced sufficient evidence to disprove that Espinosa used a reasonable degree of force.

For these reasons, the state produced sufficient evidence to disprove Espinosa's defense of self-defense and, thus, to support his conviction of second-degree assault. We need not address Espinosa's argument concerning the terroristic-threats charge because the district court did not record a judgment of conviction or impose a sentence with respect to that offense. *See State v. Hoelzel*, 639 N.W.2d 605, 609 (Minn. 2002) (holding that jury verdict of guilt, without recorded judgment of conviction and sentence, is not final, appealable adjudication); *State v. Ashland*, 287 N.W.2d 649, 650 (Minn. 1979) (declining to address sufficiency-of-evidence argument for counts on which defendant was found guilty but not sentenced or formally adjudicated guilty). If Espinosa were sentenced on the terroristic-threats offense at any time in the future, he would have an opportunity at that time to pursue a direct appeal from a final judgment on the refusal offense. *See* Minn. R. Crim. P. 27.03, subd. 8, 28.02, subd. 2(1); *State v. LaTourelle*, 343 N.W.2d 277, 284 (Minn. 1984).

**Affirmed.**

7