STATE OF MINNESOTA

IN SUPREME COURT

A22-0960

Court of Appeals                                                        McKeig, J.

State of Minnesota,

            Respondent,

vs.                                                        Filed: March 20, 2024
                                                          Office of Appellate Courts
John Ishmael Bradley, III,

            Appellant.

———————————————

Keith Ellison, Attorney General, Saint Paul, Minnesota, and;

Kimberly J. Maki, Saint Louis County Attorney, Aaron Welch, Assistant Saint Louis County Attorney, Virginia, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Greg Scanlan, Assistant State Public Defender, Saint Paul, Minnesota, for appellant.

———————————————

S Y L L A B U S

1.      Sufficient evidence supported the jury's verdict of second-degree assault when the State presented evidence that an ordinary object was likely to produce death or great bodily harm in the manner in which it was used.

2.      For purposes of Minnesota Statutes section 609.04, subdivision 1(1) (2022), which provides that a person "may be convicted of either the crime charged or [a lesser

1

degree of the same crime], but not both," domestic assault is not a "lesser degree" of second-degree assault.

Affirmed.

OPINION

McKEIG, Justice.

This appeal requires us to interpret two criminal statutes in the context of a defendant who broke a broom handle over the head of his romantic partner. First, we examine the manner-of-use definition of "dangerous weapon" found in Minnesota Statutes section 609.02, subdivision 6 (2022). Next, we must determine whether a district court violates Minnesota Statutes section 609.04, subdivision 1 (2022)—which provides, in relevant part, that a person "may be convicted of either the crime charged or [a lesser degree of the same crime], but not both"—by convicting a defendant of both second-degree assault and domestic assault when the two convictions arise from the same criminal act.

Respondent the State of Minnesota charged appellant John Ishmael Bradley, III with second-degree assault with a dangerous weapon and felony domestic assault for striking his girlfriend over the head with a broom handle. A jury found Bradley guilty of each charge, and the district court convicted Bradley of both counts. Bradley challenged his convictions, claiming that the broom handle was not a dangerous weapon because the State did not prove he used it a manner likely to cause great bodily harm, and that his two convictions for one assaultive act was improper. The court of appeals affirmed the convictions. Because there was sufficient evidence for the jury to reasonably conclude that the broom handle was a dangerous weapon, and because Minnesota Statutes

2

section 609.04, subdivision 1, does not prohibit convicting Bradley of both second-degree assault and domestic assault, we affirm.

**FACTS**

In January 2022, Bradley and his girlfriend R.C. argued at her apartment over a misplaced cell phone. During the argument, Bradley struck R.C. over the head with an approximately 1-inch thick and 2- to 3-foot-long broom handle. The broom handle broke and Bradley fled the scene. After the police arrived, an ambulance took R.C. to the hospital where she received seven stitches for a 6-centimeter gash in her head. The State charged Bradley with second-degree assault under Minnesota Statutes section 609.222, subdivision 1 (2022), and felony domestic assault under Minnesota Statutes section 609.2242, subdivision 4 (2022).

At a jury trial, R.C. testified for the State but was treated as a hostile witness because her testimony was evasive and she claimed not to remember much. Other statements R.C. made about the assault were admitted into evidence, however. For example, in recorded jail calls with Bradley, R.C. repeatedly said, "you could've killed me," and in text messages between the two, R.C. wrote, "you meant to harm me and bad too," and "I looked in your eyes when you swung. I will never forget that." An officer who arrived shortly after the assault testified that the crack in the broom handle she observed was "clean fresh wood," which led her to believe it broke when Bradley struck R.C. over the head with it.

The jury found Bradley guilty of both counts. At the sentencing hearing, defense counsel inquired whether convictions should be entered for both counts considering both stemmed from the same behavioral incident. The district court responded that a conviction

3

for both counts could be entered. The district court then entered a judgment of convictions on both counts but sentenced Bradley only for the second-degree assault conviction. Bradley appealed to the court of appeals.

At the court of appeals, Bradley challenged his second-degree assault conviction by arguing that the State did not prove the broomstick was a dangerous weapon because "the evidence presented was insufficient to support the jury's finding that he used the broomstick in a manner calculated or likely to produce great bodily harm." *State v. Bradley*, No. A22-0960, 2023 WL 2962250, at *2 (Minn. App. Apr. 17, 2023). He also argued "that felony domestic assault is an included crime of second-degree assault and, therefore," Minnesota Statutes section 609.04, subdivision 1, precluded entry of judgment of conviction for that offense. *Bradley*, 2023 WL 2962250, at *1. The court of appeals affirmed. It concluded that the evidence presented at trial was sufficient to prove the broom handle was a dangerous weapon based on its manner of use. *Id.* at *2. It also held that domestic assault is not part of the multi-tiered statutory scheme in which second-degree assault is found, so Bradley's "domestic-assault conviction is not an included offense of second-degree assault" under section 609.04, subdivision 1. *Id.* at *4.

We granted Bradley's petition for further review.

**ANALYSIS**

This appeal presents two issues. The first issue involves whether the State presented sufficient evidence to prove that Bradley used a dangerous weapon when he assaulted R.C. The second issue involves whether Bradley can be convicted of both second-degree assault and domestic assault for the same behavioral incident.

4

I.

We first address whether the State presented sufficient evidence to sustain Bradley's conviction for second-degree assault. "When a sufficiency-of-the-evidence claim turns on the meaning of the statute under which a defendant has been convicted, we are presented with a question of statutory interpretation that we review de novo." *State v. Henderson*, 907 N.W.2d 623, 625 (Minn. 2018). After deciding the meaning of the statute, we apply that meaning to the facts to determine whether there is sufficient evidence to sustain the conviction. *See Fordyce v. State*, 994 N.W.2d 893, 903 (Minn. 2023); *Douglas v. State*, 986 N.W.2d 705, 711 (Minn. 2023).

Second-degree assault is unique to other types of assault in Minnesota because it requires the use of a "dangerous weapon." *See* Minn. Stat. § 609.222, subd. 1 (making it a crime to "assault[] another with a dangerous weapon"); *id.*, subd. 2 (2022) (making it a crime to "assault[] another with a dangerous weapon and inflict[] substantial bodily harm"). A "dangerous weapon" is defined in Minnesota's criminal code as:

> [A]ny firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or great bodily harm, any combustible or flammable liquid *or other device or instrumentality that, in the manner it is used or intended to be used, is calculated or likely to produce death or great bodily harm*, or any fire that is used to produce death or great bodily harm.[1]

---

[1] "Great bodily harm" is defined as "bodily injury which involves a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily member or organ, or which causes a fracture of any bodily member." Minn. Stat. § 609.02, subd. 8 (2022).

Minn. Stat. § 609.02, subd. 6 (emphasis added). Specifically at issue here is the italicized language, which we will refer to as the manner-of-use definition of a dangerous weapon. We have long held that "an item which is not designed as a weapon but which, in the manner used or intended to be used, is calculated or likely to produce death or great bodily harm" may be considered a dangerous weapon under section 609.02, subdivision 6. *State v. Moss*, 269 N.W.2d 732, 735–36 (Minn. 1978).

As a preliminary matter, Bradley asserts that courts determine as a matter of law if an object is a dangerous weapon based on the manner-of-use definition. As support, he cites a sentence from our decision in *State v. Basting*. *See Basting*, 572 N.W.2d 281, 285 (stating "as a matter of law, that the manner in which [the defendant] used his fist did not constitute the use of a dangerous weapon for purposes of an analysis under Minn. Stat. § 609.222, subd. 2"). We reject this reading of *Basting*.

At issue in *Basting* was whether the State presented sufficient evidence to prove that Basting's fist was a dangerous weapon. *Id.* We "conclude[d] that the courts below misapplied the proper legal standard" for determining whether Basting's fist was a dangerous weapon by relying exclusively on Basting's "athletic career" as a professional boxer. *Id.* at 282. The sentence Bradley cites did not establish that it is a question of law whether an ordinary object's manner of use transformed it into a dangerous weapon. Instead, this sentence was the conclusion to our analysis—that when the correct legal standard was applied, there was insufficient evidence to prove that Basting's fist was a dangerous weapon. And contrary to Bradley's claim, we have long held that whether an object was a dangerous weapon based on the manner-of-use definition is a question for the

6

factfinder. *See, e.g.*, *State v. Abdus-Salam*, 1 N.W.3d 871 (Minn. 2024) (concluding "a reasonable jury could conclude from the facts alleged by the State that the vehicles used in the 'takeovers' were dangerous weapons"); *State v. Born*, 159 N.W.2d 283, 285 (1968) (concluding "the jury could reasonably find that defendant employed an instrumentality which was dangerous").

With that in mind, we must determine whether there was sufficient evidence offered at trial to allow the jury to reasonably conclude that the broom handle was a dangerous weapon based on the manner-of-use definition. Bradley claims that the way he used the broom handle was not likely to cause death or great bodily harm. As part of this argument, Bradley asks us to interpret "likely" here using the "highly likely" standard that we adopted for civil commitment proceedings for sexually dangerous persons. *See In re Linehan*, 557 N.W.2d 171, 180 (Minn. 1996) (holding "future harmful sexual conduct must be *highly likely* to commit a proposed patient under the [Sexually Dangerous Person] Act" despite the applicable statute only requiring "likely" future harmful contact (emphasis added)), *cert. granted, vacated sub nom. Linehan v. Minnesota*, 522 U.S. 1011 (1997). But *Linehan* is distinguishable. There is a dramatic difference between whether a person is "likely" to sexually offend in the future and be subject to indefinite confinement and whether an inanimate object was "likely" to produce a specific amount of harm based on how the defendant already used it.

We recently addressed the meaning of "likely" in the manner-of-use definition of a dangerous weapon in *Abdus-Salam*. There, we held that "likely" does not mean "highly likely," but rather means " 'probable or reasonably expected' in the context of the manner-

7

of-use definition of a dangerous weapon."[2]  *Abdus-Salam*, 1 N.W.3d at 877.  We apply this same meaning to "likely" here:  an object is "likely to produce death or great bodily harm" if it is used in a manner where death or great bodily harm is a probable or reasonably expected result.  Minn. Stat. § 609.02, subd. 6.

Before applying this interpretation of "likely" to the facts here, we must address one final argument Bradley makes.  Bradley again cites *Basting*, claiming that "the strength and size of the aggressor and the victim, the vulnerability of the victim, the severity and duration of the attack, the presence or absence of victim provocation, and the nature and the extent of the injuries" should be considered when determining whether the requisite harm was likely.  572 N.W.2d at 284.  But as discussed above, *Basting* examined whether the defendant's *fist* was a dangerous weapon.  *Id.* at 285.  We characterized the factors cited by Bradley as applying to a determination of "whether a fist or a foot is a dangerous weapon."  *Id.* at 284.  We have not applied these factors beyond that factual circumstance, and we decline to do so here.

We turn then to whether the State presented sufficient evidence to prove that the broom handle was a dangerous weapon because it was used in a manner where death or great bodily harm was a probable or reasonably expected result.  When we consider a sufficiency of the evidence claim, " 'we view the evidence in the light most favorable to the verdict and assume that the factfinder disbelieved any testimony conflicting with that

---

[2]    This was in response to the interpretation used by the court of appeals, which held that "likely" means the manner in which an object is used is "known to be capable of producing" the harm.  *State v. Abdus-Salam*, 988 N.W.2d 493, 499 (Minn. App. 2023).

8

verdict.' " *State v. King*, 990 N.W.2d 406, 416 (Minn. 2023) (quoting *State v. Fardan*, 773 N.W.2d 303, 321 (Minn. 2009)). If a factfinder could reasonably decide that the defendant is guilty of the charged offense based on the evidence offered, "[w]e will not disturb the verdict." *Id.*

The evidence viewed in a manner most favorable to the verdict shows that: 1) the broom handle was 2- to 3-foot-long and an inch in diameter; 2) Bradley was in an argument with R.C. when he struck her with the broom handle; 3) Bradley swung at and hit R.C.'s head, a particularly vulnerable part of the body; 4) while attacking; 5) which caused a gash requiring transportation to the hospital by ambulance for medical treatment including seven stitches; and 6) caused the broom handle to break. A jury could reasonably conclude that great bodily harm was a probable or reasonably expected result from using a broom handle in this manner. In fact, we previously rejected a claim that there was insufficient evidence to support a conviction for assault with a dangerous weapon when the defendant struck the victim one time in the head with a similar object—a pool cue—causing a cut to the victim's head. *State v. Upton*, 306 N.W.2d 117, 117–18 (Minn. 1981). We therefore hold that there was sufficient evidence to allow the jury—which was properly instructed using the language of the statute—to find the broom handle was a dangerous weapon because the manner in which it was used was likely to cause death or great bodily harm.[3]

---

[3]    Because the evidence is sufficient to prove that Bradley's use of the broom handle was *likely* to cause great bodily harm, we do not need to decide whether Bradley used the broom handle in a manner *calculated* to cause death or great bodily harm. *See* Minn. Stat. § 609.02, subd. 6 (stating that an object is a dangerous weapon if "the manner it is used or intended to be used, is calculated or likely to produce death or great bodily harm").

9

II.

We next consider whether the district court erred when it entered convictions for both second-degree assault and domestic assault for the same criminal act. This question revolves around Minnesota Statutes section 609.04, which provides that "[u]pon prosecution for a crime, the actor may be convicted of either the crime charged or an included offense, but not both."[4] Minn. Stat. § 609.04, subd. 1. The statute thus proscribes multiple convictions when those convictions are for the crime charged and an "included offense." *Id.* The statute lists five categories of included offenses, *id.*; one of which is "a lesser degree of the same crime," *id.*, subd. 1(1). This category is the only one that could apply in this case. We must determine whether this category in Minnesota Statutes section 609.04 prohibits convictions for a second offense that is not included in the ordinally numbered statutory degrees of assaultive conduct—i.e., first- through fifth-degree assault—but is nevertheless an assaultive act. Because this question involves statutory interpretation, it "presents a question of law, which we review de novo." *State v. Riggs*, 865 N.W.2d 679, 682 (Minn. 2015).

Bradley argues that domestic assault is a "lesser degree" of second-degree assault, which would prohibit his conviction for domestic assault under Minnesota Statutes section 609.04, subdivision 1. Accordingly, we must determine the meaning of "degree"

---

[4]     Minnesota Statutes section 609.04 does not explicitly state that an "included offense" is necessarily an offense which is committed in the same criminal act as the charged offense, but our case law acknowledges and adopts such an inference. *See State v. Osborne*, 715 N.W.2d 436, 447 (Minn. 2006) ("A defendant may not be convicted of both the charged offense and a lesser-included offense for the same criminal act.").

10

in the category of "a lesser degree of the same crime." We have stated that "[i]f the lesser offense is a lesser degree of the same crime or a lesser degree of a multi-tier statutory scheme dealing with a particular subject, then it is an 'included offense' under section 609.04." *State v. Hackler*, 532 N.W.2d 559, 559 (Minn. 1995). Bradley argues that what makes a crime a greater or lesser degree of the same crime is not its relation to the ordinal degrees found in the statutory scheme, but rather, whether the offense is of a different *intensity*. The State contends that the term "degree" refers only to offenses within an ordinal statutory scheme. *See* Minn. Stat. §§ 609.221–609.2231, 609.224 (2022).

"The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2022); *see also State v. Powers*, 962 N.W.2d 853, 858 (Minn. 2021). We must "first determine whether the statute's language, on its face, is ambiguous." *State v. Sanschagrin*, 952 N.W.2d 620, 624 (Minn. 2020) (quoting *Am. Tower, L.P. v. City of Grant*, 636 N.W.2d 309, 312 (Minn. 2001)). A statute's language is ambiguous if it is "subject to more than one reasonable interpretation." *State v. Mauer*, 741 N.W.2d 107, 111 (Minn. 2007). When considering if statutory language is susceptible to more than one reasonable interpretation, "we consider the canons of interpretation listed in Minn. Stat. § 645.08." *Riggs*, 865 N.W.2d at 682. " '[W]ords and phrases are construed according to rules of grammar and according to their common and approved usage.' " *Shefa v. Ellison*, 968 N.W.2d 818, 825 (Minn. 2022) (quoting Minn. Stat. § 645.08 (2022)). However, "technical words and phrases and such others as have acquired a special meaning . . . are construed according to such special

11

meaning." Minn. Stat. § 645.08(1); *see also State v. Schouweiler*, 887 N.W.2d 22, 25 (Minn. 2016).

When we decide "whether words in a statute have a technical meaning or an ordinary meaning, we look at the context in which the phrase appears." *Housing & Redev. Auth. of Duluth v. Lee*, 852 N.W.2d 683, 691 (Minn. 2014). The statutory context in which Minnesota Statutes section 609.04 is found is Chapter 609, Minnesota's criminal code. The criminal code contains dozens of statutes that specifically differentiate the severity of a particular offense using the word "degree." *See, e.g.*, Minn. Stat. §§ 609.185–609.195 (2022) (establishing the crimes of first- through third-degree murder); Minn. Stat. §§ 609.342–609.3451 (2022) (establishing the crimes of first- through fifth-degree criminal sexual conduct).

When "construing statutes, we assume that the Legislature enacts statutes 'with full knowledge of prior legislation on the same subject.' " *State v. Leathers*, 799 N.W.2d 606, 609 (Minn. 2011) (quoting *Meister v. W. Nat. Mut. Ins. Co.*, 479 N.W.2d 372, 378 (Minn. 1992)). Chapter 609, including Minnesota Statutes section 609.04, was enacted in 1963. *See* Act of May 17, 1963, ch. 753, 1963 Minn. Laws 1185, 1188 (codified as amended at Minn. Stat. § 609.01, et al. (2022)). Before this, Minnesota's criminal code contained numerous examples of the word "degree" consistent with differentiating between the severity of a particular offense. *See, e.g.*, Minn. Stat. §§ 619.07–609.10 (1961) (establishing the crimes of first- through third-degree murder); Minn. Stat. §§ 619.42–619.44 (1961) (establishing the crimes of first- through third-degree robbery). With that knowledge, the Legislature specifically chose to use the term "degree" in

section 609.04, subdivision 1(1)—a word that has a clear technical meaning within the greater context of Chapter 609—rather than a word that would suggest a non-technical meaning, such as Bradley's suggested "intensity."

Because the only reasonable interpretation of the term "degree" in context is the technical meaning referring to the ordinally numbered degrees found throughout the criminal code, we therefore conclude the meaning of "degree" as used in Minnesota Statutes section § 609.04, subd. 1(1), to be unambiguous.

"When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn. Stat. § 645.16; *see also Johnson v. Cook Cnty.*, 786 N.W.2d 291, 293–94 (Minn. 2010). We recognize Bradley's argument that second-degree assault and domestic assault are both, by their very names, assaults. However, having a similar name for an offense does not place one crime into the multi-tier statutory scheme of another. For example, the crimes of theft, Minn. Stat. § 609.52 (2022), and mail theft, Minn. Stat. § 609.529 (2022), have similar names and are both theft-based offenses, but they are clearly not different *degrees* of one another. *See* Minn. Stat. § 609.52, subd. 3 (creating its own multi-tier statutory scheme for basic theft by including misdemeanor, gross misdemeanor, and felony level penalties). Even though both second-degree assault and domestic assault have been titled as "assaults" by the Legislature, it would be inappropriate for us to ignore the plain, unambiguous language of Minnesota Statutes section 609.04, subdivision 1(1), which only applies to "a lesser degree of the same crime."

13

On a final note, two of the three types of third-degree assault involve a specific type of victim. *Compare* Minn. Stat. § 609.223, subd. 1 (2022) (assaulting another and inflicting substantial bodily harm), *with id.*, subd. 2 (2022) (assaulting a minor and engaging in a past pattern of child abuse), *and id.*, subd. 3 (assaulting a victim under four) (2022). This detail shows that if the Legislature had *wanted* to fold domestic assault—an assault similarly involving a specific type of victim—into one of the ordinal degrees of assault, it knew how to do so. But instead, it chose to place domestic assault outside the multiple degree scheme set forth in sections 609.221–609.2231 and 609.224.

Having determined the term "degree" in the phrase "lesser degree of the same crime" in Minnesota Statutes section 609.04, subdivision 1(1), is an unambiguous technical term referring to offenses within an ordinal statutory scheme, we conclude that domestic assault is not a lesser degree of second-degree assault. Because of this, we hold that the district court did not err when entering convictions for both second-degree assault and for domestic assault.[5]

## CONCLUSION

For the foregoing reasons, we affirm the decision of the court of appeals.

Affirmed.

---

[5] We note that the district court also appropriately sentenced Bradley for only one of the assault convictions. As we have previously recognized, generally, "if a defendant commits multiple offenses against the same victim during a single behavioral incident, Minn. Stat. § 609.035 provides that the defendant may be sentenced for only one of those offenses." *State v. Bookwalter*, 541 N.W.2d 290, 293 (Minn. 1995).

14